## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JACINTA DANKS, ) | Civil Action No. 21-1806 |
| ) | |
| *Plaintiff*, ) | Judge: |
| ) | |
| v. ) | Magistrate Judge: |
| ) | |
| PHILLIP GRAYSON, DANIEL GRAYSON, ) | **COMPLAINT** |
| CHASE LAWLER, NICHOLAS GAGLIANO, ) | |
| NATHAN HODGES, JOSHUA ZURITA, ) | **JURY TRIAL DEMANDED** |
| BRITTANY MAYER, JEFFREY FITZMORRIS, ) | |
| BRANDON MCCORMICK, VICTORIA ) | |
| SCHOEN, MICHAEL J. GLASER, and THE ) | |
| CITY OF KENNER, ) | |
| ) | |
| *Defendants*. ) | |
| ) | |

## <u>COMPLAINT</u>

COMES NOW Plaintiff Jacinta Danks ("Ms. Danks"), by and through her undersigned counsel. She brings this Complaint against three individual defendants, seven bystander defendants, the City of Kenner ("Kenner"), and Police Chief Michael J. Glaser ("Police Chief Glaser"). Defendants Phillip Grayson ("P. Grayson"), Daniel Grayson ("D. Grayson"), and Chase Lawler ("Lawler") are herein collectively referred to as the "Individual Defendants," while Defendants Nicholas Gagliano ("Gagliano"), Nathan Hodges ("Hodges"), Joshua Zurita ("Zurita"), Brittany Mayer ("Mayer"), Jeffrey Fitzmorris ("Fitzmorris"), Brandon McCormick ("McCormick"), and Victoria Schoen ("Schoen") are collectively referred to herein as the "Bystander Defendants." Ms. Danks hereby states and alleges as follows:

**INTRODUCTION**

1.      This case arises out of the violent extraction of a nonthreatening and unarmed passenger from a vehicle. The passenger, Plaintiff Jacinta Danks, had done nothing wrong and had no criminal record. On the night in question, October 10, 2020, Ms. Danks, a five-foot-two woman, was riding in the passenger seat of a vehicle her brother was driving as the two, along with another passenger, reminisced and mourned the recent passing of the Danks' younger brother.

2.      As the car drove through a residental Kenner neighborhood, the lights of a Kenner Police Department ("Kenner PD") police officer started to flash. When the three were pulled over, the officer noted that the car had a recently expired temporary license plate. As the police arrested her brother for conduct that had nothing to do with Ms. Danks, she remained in the passenger seat, unarmed and attempting to cooperate with law enforcement with her hands up where the police could see them. She expected that she would be free to go after answering some questions.

3.      Nonethess, despite the lack of any active resistance or aggressive conduct on the part of Ms. Danks, multiple officers from Kenner PD rushed to Ms. Danks' side of the car. The Individual Defendants shouted as they approached and, before giving Ms. Danks a chance to get out of the vehicle, violently pulled her out of the car.

4.      Ms. Danks did not even have an opportunity to unbuckle her seatbelt before the Individual Defendants grabbed and pulled her by her hair, shirt, and leg. In their barbarous efforts to forcibly remove her from the vehicle, the Individual Defendants caused Ms. Danks to be choked by her seatbelt, caused her foot to be caught in the car door, and battered her arm so badly it left lasting bruising.

5.      After violently yanking her from the vehicle, the Individual Defendants continued to inflict force that was grossly disproportionate to any amount of force that would have been reasonably necessary to subdue a woman of her small stature. The Individual Defendants proceeded to throw Ms. Danks to the ground, causing an ongoing back injury. They handcuffed

her while she was face down on the ground. Defendant Lawler then used his foot to step on Ms. Danks' back, pressing her further against the pavement so that she could not move.

6.      The Individual Defendants also subjected Ms. Danks to public humiliation. The way in which the Individual Defendants forcibly pulled Ms. Danks from the car caused her pants to slide down, leaving her underwear and menstruation exposed to onlookers. The Individual Defendants confiscated Ms. Danks' cell phone and new designer wallet and took her to the jail barefoot after refusing to help put her shoes back on. Neither the Individual Defendants nor the Kenner PD ever returned Ms. Danks' cell phone or wallet, forcing her to replace them at her own cost.

7.      The Individual Defendants had no probable cause to arrest Ms. Danks when they yanked her from the car. They also had no probable cause when they formally placed Ms. Danks under arrest on trumped up charges of resisting and battering an officer—something Ms. Danks did not and could not have done given the force and speed at which she was pulled from the car.

8.      Seizing and forcibly restraining someone, and then placing her under arrest for simply being a passenger in a vehicle operated by someone else who was arrested was objectively unreasonable. The Individual Defendants had no reasonable suspicion of any criminal conduct committed by Ms. Danks. Rather, this is a clear case of police overstepping boundaries, assuming Ms. Danks must have been guilty of something due to her association with the driver, her brother, and assuming Ms. Danks would never be positioned to challenge their authority.

9.      The Bystander Defendants could have stepped in to prevent the use of force against Ms. Danks. But they stood by and did not intervene. For a substantial time none even assisted pulling up her pants to prevent her private areas and menstruation from being exposed despite her pleas for assistance.

10.      The violent and humiliating—and completely unnecessary—forcible removal and arrest of an innocent passenger not only left Ms. Danks physically injured, but also caused her significant and ongoing trauma. As someone who had never been in trouble with the law, and who was always cooperative and supportive of law enforcement, the extreme and unreasonable

nature of this incident has made Ms. Danks traumatized, anxious and now terrified of the police. Additionally, Ms. Danks has ties to the Kenner area, such as the location of her brother's grave within a few miles of where the incident occurred, and a church attended by relatives of Ms. Danks. Ms. Danks fears being subject to another extreme and unreasonable traffic stop and fears retaliation by the Individual and Bystander Defendants any time she will be in the area in the future.

11.    The Fourth Amendment guarantees a clearly established right to be free from excessive force at the hands of the police. *See, e.g.*, *Tarver v. City of Edna*, 410 F.3d 745, 753-54 (5th Cir. 2005). It was clearly established in the caselaw at the time of Ms. Danks' arrest that roughly yanking a person from a car and/or throwing them to the ground and stepping on them is unconstitutional when the person poses no threat to the officer or others, is not actively resisting arrest, and is not actively trying to flee. *See, e.g.*, *Hanks v. Rogers*, 853 F.3d 738, 747 (5th Cir. 2017) ("[A]n officer violates the Fourth Amendment if he abruptly resorts to overwhelming physical force rather than continuing verbal negotiations with an individual who poses no immediate threat or flight risk, who engages in, at most, passive resistance, and whom the officer stopped for a minor traffic violation."); *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017) (plaintiff's refusal to exit vehicle on the officer's command did not warrant throwing plaintiff to the ground, kneeing him in the back, and pushing his face into the concrete); *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) ("[Plaintiff] was stopped for a minor traffic violation—exceeding the 40-mph speed limit by 10mph—making the need for force substantially lower than if she had been suspected of a serious crime."); *see also El v. City of Pittsburgh*, 975 F.3d 327, 340 (3d Cir. 2020) ("[C]ases from our sister Circuits establish a "consensus . . . of persuasive authority," that an unarmed individual who is not suspected of a serious crime—including one who is verbally uncooperative or passively resists the police—has the right not to be subjected to physical force such as being grabbed, dragged, or taken down.").

12.    The Fourth Amendment also guarantees that one may not be arrested without probable cause. *See, e.g.*, *Alexander*, 854 F.3d at 306–07 ("There can be no doubt that the right

-4-

not to be arrested absent probable cause was clearly established at the time of [plaintiff]'s arrest."). It was clearly established at the time of Ms. Danks' encounter with Kenner PD that probable cause must be assessed individually. *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) ("Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another . . . ."). Moreover, it was clearly established at the time of Ms. Danks' encounter with the Kenner PD that an occupant of a car may not constitutionally be arrested and searched, even if another occupant of the car admits to a violation of the law, unless there is something more to establish probable cause as to each individual occupant. *Id*. at 91 ("[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person.").

13.    The Individual Defendants violated each of these clearly established Constitutional rights held by Ms. Danks.

14.    The series of violations of Ms. Danks' Fourth Amendment rights by law enforcement was the result of the City of Kenner and Police Chief Glaser's official policy, custom and practice of not training its officers on how to properly interact with passengers during traffic stops without using excessive force or violating Fourth Amendment rights. The repeated instances of excessive force by the Kenner PD reflect the City of Kenner and Police Chief Glaser's deliberate indifferent to citizens' Fourth Amendment rights, and resulted in the Individual Defendants' acting with impunity in their interactions with Ms. Danks.

15.    This suit seeks to hold the Individual Defendants accountable for their blatant violations of Ms. Danks' Fourth Amendment rights, the Bystander Defendants accountable for standing by and permitting those violations, and Defendants City of Kenner and Police Chief Glaser accountable for failing to provide obviously needed officer training that would have prevented the use of excessive force against, and unlawful arrest of, an innocent automobile passenger.

## JURISDICTION AND VENUE

16.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1343 because Ms. Danks' claims arise under the Constitution and laws of the United States, including under 28 U.S.C. §§ 1983 and 1988.

17.     This Court has supplemental jurisdiction over all other claims asserted under the laws of the State of Louisiana pursuant to 28 U.S.C. § 1367, because they arise out of the same operative facts and are so related to the federal claims that they are part of the same case or controversy.

18.     Venue is proper in the Eastern District of Louisiana pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in the City of Kenner, where the unlawful incident took place, which is located in the Eastern District of Louisiana. On information and belief, the Individual Defendants and Bystander Defendants are all residents of the Eastern District of Louisiana. Venue is thus also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because the Individual and Bystander Defendants reside in this district.

## PARTIES

19.     Plaintiff Jacinta Danks is an individual who resides in Louisiana.

20.     Defendant P. Grayson was, at all relevant times herein, an officer with the Kenner PD acting in the course and scope of his employment and under color of state law at all times relevant to this Complaint. He is sued in his individual capacity.

21.     Defendant D. Grayson was, at all relevant times herein, an officer with the Kenner PD acting in the course and scope of his employment and under color of state law at all times relevant to this Complaint. He is sued in his individual capacity.

22.     Defendant Lawler was, at all relevant times herein, an officer with the Kenner PD acting in the course and scope of his employment and under color of state law at all times relevant to this Complaint. He is sued in his individual capacity.

23.     Defendant Gagliano was, at all relevant times herein, an officer with the Kenner PD acting in the course and scope of his employment and under color of state law at all times relevant to this Complaint. He is sued in his individual capacity.

24.     Defendant Hodges was, at all relevant times herein, an officer with the Kenner PD acting in the course and scope of his employment and under color of state law at all times relevant to this Complaint. He is sued in his individual capacity.

25.     Defendant Zurita was, at all relevant times herein, an officer with the Kenner PD acting in the course and scope of his employment and under color of state law at all times relevant to this Complaint. He is sued in his individual capacity.

26.     Defendant Mayer was, at all relevant times herein, an officer with the Kenner PD acting in the course and scope of her employment and under color of state law at all times relevant to this Complaint. She is sued in her individual capacity.

27.     Defendant Fitzmorris was, at all relevant times herein, an officer with the Kenner PD acting in the course and scope of his employment and under color of state law at all times relevant to this Complaint. He is sued in his individual capacity.

28.     Defendant McCormick was, at all relevant times herein, an officer with the Kenner PD acting in the course and scope of his employment and under color of state law at all times relevant to this Complaint. He is sued in his individual capacity.

29.     Defendant Schoen was, at all relevant times herein, an officer with the Kenner PD acting in the course and scope of her employment and under color of state law at all times relevant to this Complaint. She is sued in her individual capacity.

30.     Defendant City of Kenner is a municipality in Jefferson Parish, Louisiana and has been duly incorporated. It is a municipality for purposes of 42 U.S.C. § 1983. Kenner PD is a department of the City of Kenner and it exercises the law enforcement authority of the City.

31.     Defendant Michael J. Glaser was, at all relevant times, the Chief of Police of the City of Kenner. As Chief of Police, Glaser was the chief law enforcement officer of the City and all law enforcement authority was vested in him. Upon information and belief, Police Chief

Glaser's responsibilities include but are not limited to the hiring, training, supervision, discipline, administration, policies, customs, practices, operations, management, and control of Kenner PD and its officers, including Defendants P. Grayson, D. Grayson, Lawler, Gagliano, Hodges, Zurita, Mayer, Fitzmorris, McCormick, and Schoen. As a matter of federal law, Police Chief Glaser is liable for his own actions as final policymaker. As a matter of Louisiana state law, he is liable for his own actions and is vicariously liable for the actions of the other Defendants. Police Chief Glaser is sued in his official capacity.

## **FACTUAL ALLEGATIONS**

### *Defendant P. Grayson Conducts a Traffic Stop and Ms. Danks Cooperates*

32.     On the night of October 10, 2020, Ms. Danks, her brother Ernest Danks ("Mr. Danks"), and Damien Dennis, a friend of Mr. Danks, were driving around residential neighborhoods in the Greater New Orleans Metropolitan area in Mr. Dennis' car. The three were reminiscing and mourning the tragic loss of the Danks' younger brother, Jimmie Danks, who had died less than a month earlier at the age of 31.

33.     While driving through the residential neighborhood of Kenner, the lights of a Kenner Police cruiser began flashing behind the car. Mr. Danks pulled the car over on Clay Street, off of the Jefferson Highway.

34.     The traffic stop was initiated, upon information and belief, by Defendant P. Grayson because allegedly he saw a temporary paper license plate affixed to the rear windshield of the vehicle that he determined had expired four days earlier.

35.     After pulling over on the side of the street, Mr. Danks fled from the car and Defendant P. Grayson chased after him, while Mr. Dennis remained seated in the back of the car, and Ms. Danks remained in the passenger seat with her seatbelt fastened and hands up, eager to cooperate with law enforcement. Ms. Danks held her cellphone in one hand and a new designer wallet in the other so that the police would see that she did not have a weapon and was cooperative.

36.     Ms. Danks called her friend on her cell phone to ask to be picked up, believing that she would at most be asked a few questions and let go because she did not have any criminal record and had not done anything wrong. She put the call on speaker phone so that she could speak to her friend with her hands in the air.

37.     In quick succession, at least three or four additional police vehicles arrived at the scene carrying Defendants Lawler, D. Grayson and the Bystander Defendants. Upon information and belief, backup arrived before Defendant P. Grayson apprehended and arrested Mr. Danks.

### The Individual Defendants Use Excessive Force

38.     Ms. Danks was afraid for her life as she sat in the passenger's seat of the vehicle silently praying. She had read about the recent deaths of Breonna Taylor, Atatiana Jefferson, and Aura Rosser at the hands of the police, and she was terrified that she also would end up dead through no fault of her own.

39.     After apprehending Mr. Danks, Defendant P. Grayson, joined by Defendants Lawler and D. Grayson, rushed to the passenger side of the car. They began yelling at Ms. Danks—who had been sitting with her hands in the air for at least five to ten minutes—but she could not make out what they were saying.

40.     Ms. Danks was disoriented and frightened by the Individual Defendants' aggressive shouting and the manner in which they approached her side of the car. Momentarily paralyzed by fear, Ms. Danks—who was sitting still with her her hands up—found herself unable to immediately speak or open the door.[1]

---

[1] It is well established that a paralyzing freeze response may occur when a person feels so overpowered, overwhelmed, or trapped, that they feel there is no option to either flee or fight. *See* Thierry Steimer, *The biology of fear-and anxiety related behaviors*, 4(3) NATIONAL LIBRARY OF MEDICINE, at 231-49 (2002) (finding that "[p]assive coping strategies, such as immobilization or freezing, are usually elicited when threat is inescapable, and are usually characterized by autonomic inhibition (hypotension, bradychardia), and a more pronounced increase in the neuroendocrine response (activation of the hypothalamopituitary-adrenal axis and increased glucocorticoid secretion)"). *See also* Patrik Vuilleumier, *Hysterical Conversion and Brain Function*, 150 NATIONAL LIBRARY OF MEDICINE, at 309-29 (2005) (establishing that fear elicits characteristic patterns of defensive behavior, including freezing); Christopher Bergland,

(continued...)

41.     The Individual Defendants made no attempt to negotiate or even converse with Ms. Danks to find out if she was okay and physically able to unbuckle her seatbelt and step out of the car. Instead, mere seconds after shouting demands at Ms. Danks and Mr. Dennis,—and before she had a chance to overcome her temporary paralysis and step out of the car, the Individual Defendants grabbed Ms. Danks and forcibly removed her from the vehicle.

42.     After the car door was opened, the Individual Defendants grabbed Ms. Danks by her shirt, hair, and leg, forcibly pulling her out of the vehicle.

43.     Because Ms. Danks was still belted into the car seat at that time, the seatbelt choked her while the Individual Defendants yanked her body, hair and clothes from various angles. Eventually, either by being unlatched or cut, she was released from the seatbelt and yanked further out of the car.

44.     As she was being forcibly removed, Ms. Danks' foot got caught between the cabin of the car and the car door.

45.     Upon information and belief, each of the Bystander Defendants was in a position to intervene when Ms. Danks was sitting with her hands up in the passenger seat. But at no point did any of the Bystander Defendants attempt to take any measure to de-escalate the situation or otherwise protect Ms. Danks from the Individual Defendants' use of force.

### *Ms. Danks is Wrongfully Detained and Subjected to Additional Unneccessary Force as Well as Public Humiliation*

46.     After Ms. Danks was removed from the vehicle, the Individual Defendants threw her face first to the ground and handcuffed her behind her back.

---

*Neuroscientists Discover the Roots of "Fear-Evoked Freezing*," PSYCHOLOGY TODAY (May 1, 2014), https://www.psychologytoday.com/us/blog/the-athletes-way/201405/neuroscientists-discover-the-roots-fear-evoked-freezing (reporting that "[f]or the first time, neuroscientists at the University of Bristol have identified a brain pathway that may be the root of the universal response to freeze in place when we are afraid. Their revolutionary study—released on April 23, 2014—discovered a chain of neural connections stemming from the cerebellum. *When activated by a real or imagined threatening stimuli, these neural connections can cause the body to automatically freeze*.") (emphasis added).

47.    At no point prior to extracting Ms. Danks from the vehicle or throwing her to the ground did the Individual Defendants indicate they suspected Ms. Danks was involved in any illegal activity or presented any threat.

48.    Defendant Lawler then stepped on Ms. Danks' back, pressing her into the ground so hard that she could not move.

49.    When the Individual Defendants pulled Ms. Danks from the vehicle, her pants came down, exposing her underwear and menstruation to the Individual and Bystander Defendants, as well as the neighbors who had come outside to see what was happening.

50.    Restrained by handcuffs and Defendant Lawler's foot, Ms. Danks was unable to pull her pants back up. She was mortified that onlookers were witnessing her exposed body, especially given that she was menstruating.

51.    The Individual and Bystander Defendants kept Ms. Danks handcuffed and face down on the ground as Defendant Lawler's foot pressed into her back for approximately five minutes or more.

52.    All the while, Ms. Danks begged the Individual Defendants and Bystander Defendants to pull her pants up. They did not initially respond to her repeated pleas. Instead, they watched for an extended period of time as she squirmed in an attempt to do so herself. Eventually, someone pulled her pants up.

53.    As she lay pinned to the ground, one of the Individual Defendants removed Ms. Danks' phone and wallet from her hands.

54.    From her vantage point on the ground, Ms. Danks could see the police handling her phone, apparently pressing a button on it. Either Defendant Schoen or Defendant Mayer told Ms. Danks that the phone would be taken to the jail where she was headed.

55.    The Kenner PD did not return Ms. Danks' cell phone or wallet to her and have not provided any information concerning either item.

*Ms. Danks is Transported to Jail and Falsely Charged with Resisting Arrest and Battery of a Police Officer*

56.    Eventually, Defendant Lawler yanked Ms. Danks to her feet. It was only then that she was patted down, either by Defendant Schoen or Defendant Mayer.

57.    Ms. Danks had still not been told by officers what she was being arrested for as they read her *Miranda* rights. Ms. Danks asked Defendant Lawler why she was under arrest and he responded that it was because she had kicked him. Ms. Danks was confused, did not recall kicking any officer, and explained that she could not have had any control over her limbs while she was being pulled and yanked from the vehicle.

58.    Defendant Lawler then walked the barefoot and handcuffed Ms. Danks to the back of a patrol car. He threw her shoes in the back seat of the car, ignoring her request for him to at least position them so that she could put them back on.

59.    Defendant Lawler proceeded to transport Ms. Danks to the City of Kenner jail. It was only when Ms. Danks reached the jail that someone finally helped her with her shoes. Ms. Danks was booked on charges of resisting an officer and battery of a police officer, and held until the next day, when she was released. No one returned Ms. Danks cell phone and wallet to her when she was released.

60.    It was not until later that Ms. Danks learned the charges of battery were not for allegedly kicking Defendant Lawler as he had previously stated, but  for allegedly biting the finger of a different officer, Defendant Grayson. Ms. Danks has no recollection of biting any officer.

*Ms. Danks Suffers Physical and Emotional Injuries as a Result of the Incident*

61.    For weeks after the incident and as a result of her violent treatment, Ms. Danks experienced physical pain, including a bruised handprint on her arm that lasted multiple weeks. Ms. Danks' back pain caused by being thrown to the gound and stepped on is ongoing. Whether sitting or standing, she feels pain in her back. That pain often shoots up from the middle of her back to the top of her shoulders.

62.     Ms. Danks also suffered serious emotional trauma and continues to experience mental anguish over her treatment at the hands of the police. She has always considered herself someone who cooperates with law enforcement and does not understand why she was subjected to physical abuse as well as public humiliation when she was simply waiting in a stopped car with her hands in the air.

63.     Ms. Danks is also distressed that Defendant P. Grayson accused her of resisting arrest and biting him, which she denies. These false accusations have caused Ms. Danks further mental anguish as well as the inconvenience and expense of having to appear repeatedly in criminal court, in a case that remains pending as of the date of filing of this complaint.

### Ms. Danks' Complaints Concerning the Incident have Gone Unheeded

64.     On October 19, 2020 Ms. Danks sent an email to the Kenner PD at kpd@kenner.la.us detailing her mistreatement by the police and her confusion about what had occurred. A true and correct copy of the October 19, 2020 email is attached hereto as Exhibit A.

65.     Ms. Danks followed up with Kenner PD about her mistreatment again via phone and was informed that she should submit a Citizen's Complaint Form. On November 24, 2020 Ms. Danks submitted an official Citizen's Complaint to Kenner PD via email to cbates@kennerpd.com. A true and correct copy of Ms. Danks' November 24, 2020 email and attached complaint is attached hereto as Exhibit B.

66.     As of the filing of this Complaint, Ms. Danks has yet to recieve any response to her email or the Citizen's Complaint that she filed.

### Kenner PD has a History of Violence and Does Not Provide Any Training on How to Treat Passengers and Avoid Excessive Force During Traffic Stops

67.     The abuse that Ms. Danks endured at the hands of Kenner PD is a continuation of a history and pattern of intentional discriminatory treatment that she and others from the Black community are forced to endure in Kenner, Lousiana.

68.     The area of Kenner, Louisiana is known for racial profiling and the use of excessive force by police.

69.     Since January 1, 2018, there have been numerous complaints concerning use of force filed with Kenner PD.

70.     For example, Defendant Zurita had a complaint for inappropriate use of physical force in October 2016. Defendant P. Grayson had a complaint for alleged excessive force/disputed arrest in October 11, 2020—the day after Ms. Danks unlawful arrest. Defendant Lawler had a complaint for alleged false arrest/use of force in April 2021.

71.     A public record request was sent pursuant to Louisiana Public Records Act § 44:1 *et seq.* on July 14, 2021 to the Kenner PD via e-mail and U.S. Certified Mail. Requests 8, 9, and 10 sought records from 2018 to present documenting, inter alia, any: (1) formal trainings Kenner PD officers received in relation to the treatment of passengers during traffic stops, and all related course materials; and (2) formal trainings Kenner PD officers received in relation to excessive force during traffic stops and all related course materials.

72.     On August 10, 2021, Kenner PD responded that Kenner PD was unable to provide documents in response to these requests because they do not exist.

## FEDERAL CLAIMS

### COUNT I
### 42 U.S.C. § 1983 – Unlawful Seizure (Excessive Force) in Violation of the Fourth Amendment
### (Against the Individual Defendants)

73.     Ms. Danks hereby incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

74.     The Individual Defendants, at all times relevant hereto, were acting under color of state law in their capacities as officers of the Kenner PD, and their acts and omissions were conducted within the scope of their employment.

75.     The Fourth Amendment guarantees a clearly established right to be free from excessive force at the hands of the police. *See, e.g.*, *Tarver*, 410 F.3d at 753-54. And it was clearly established in the caselaw at the time of Ms. Danks' arrest that roughly yanking a person from a car and/or throwing them to the ground is unconstitutional when the person poses no threat to the

officer, is not actively resisting arrest, and is not actively trying to flee. *See, e.g.*, *Hank*, 853 F.3d at 747; *Alexander*, 854 F.3d at 309; *Deville*, 567 F.3d at 167; *El*, 975 F.3d at 340.

76.     Any reasonable police officer knew or should have known of the right to be free from excessive force at that time of the complained of conduct as this right was clearly established at that time.

77.     The reasonableness of a police officer's use of force depends upon (i) the severity of the crime at issue, (ii) the extent to which the suspect poses an immediate threat to the safety of the officers or others, and (iii) whether the suspect is actively resisting or attempting to evade arrest by flight.

78.     At the time the Individual Defendants seized Ms. Danks from the passenger seat of Mr. Dennis' vehicle, and then threw her to the ground and stepped on her, Ms. Danks was not suspected of any crime.

79.     At the time Ms. Danks was seized from the passenger seat of Mr. Dennis' vehicle, she had been sitting in the passenger seat with her seatbelt on and her hands up and visible for approximately five to ten minutes. Ms. Danks did not and could not reasonably have been thought to pose a threat to any of the Individual Defendants, Bystander Defendants, or others in the vicinity.

80.     At the time Ms. Danks was thrown to the ground, Ms. Danks did not and could not reasonably have been thought to pose a threat to any of the Individual Defendants, Bystander Defendants, or others in the vicinity.

81.     At the time Defendant Lawler stepped on Ms. Danks back, she did not and could not reasonably have been thought to pose a threat to any of the Individual Defendants, Bystander Defendants, or others in the vicinity.

82.     At no time prior to being seized did Ms. Danks display any criminal, threatening, or aggressive behavior whatsoever.

83.     At no time prior to being seized did Ms. Danks attempt to flee or actively resist arrest.

84.     Despite Ms. Danks' lack of resistance, the Individual Defendants violently pulled her from the vehicle with enough force to leave bruises, threw her to the ground face first, and handcuffed her. Even after she was handcuffed, Defendant Lawler stepped on her back so that she could not move.

85.     No reasonable police officer in the Individual Defendants' position could have believed that under the circumstances there was a lawful justification to employ the amount of physical force they exerted against Ms. Danks—both before and after she was handcuffed.

86.     The Individual Defendants' actions and use of force as described herein were objectively unreasonable in light of the facts and circumstances confronting them and accordingly violated Ms. Danks' Fourth Amendment rights.

87.     The Individual Defendants are not entitled to qualified immunity for their conduct, because their use of force against Ms. Danks violated Ms. Danks' clearly established constitutional rights and was objectively unreasonable.

88.     As a direct and proximate result of the Individuals Defendants' excessive force, Ms. Danks suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial.

89.     Ms. Danks is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, prejudgment interest and costs as allowable by federal law.

90.     In addition to compensatory, economic, consequential and special damages, Ms. Danks is entitled to punitive damages against each of the Individual Defendants under 42 U.S.C. § 1983, in that the actions of each Individual Defendant were taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Ms. Danks.

## COUNT II
## 42 U.S.C. §1983 – Failure to Intervene in Use of Excessive Force
### (Against the Bystander Defendants)

91.    Ms. Danks hereby incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

92.    The Bystander Defendants, at all times relevant hereto, were acting under color of state law in their capacities as officers of the Kenner PD, and their acts and omissions were conducted within the scope of their employment.

93.    The Bystander Defendants witnessed the use of excessive force by the Individual Defendants against Ms. Danks and had ample time to intervene in order to prevent or mitigate injury to her.

94.    Any reasonable police officer in the position of the Bystander Defendants would have recognized that the force being used against Ms. Danks was unconstitutionally excessive. It was cleary established in the caselaw at the time that "[a]n officer is liable for failure to intervene when that officer: (1) knew a fellow officer was violating an individual's constitutional rights, (2) was present at the scene of the constitutional violation, (3) had a reasonable opportunity to prevent the harm but nevertheless, (4) chose not to act." *Joseph v. Bartlett,* 981 F.3d 319, 343 (5th Cir. 2020); *accord Hamilton v. Kindred,* 845 F.3d 659, 663 (5th Cir. 2017); *Carroll v. Ellington*, 800 F.3d 154, 171 (5th Cir. 2015); *Kitchen v. Dallas County*, 759 F.3d 468 (5th Cir. 2014); *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995).

95.    The Bystander Defendants are not entitled to qualified immunity for their conduct, because their failure to intervene despite the opportunity to do so when they knew the Individual Defendants were violating Ms. Danks' constitutional rights, deprived Ms. Danks of her clearly established constitutional rights and was objectively unreasonable.

96.    As a direct and proximate result of the Bystander Defendants' failure to take any action to prevent harm to Ms. Danks, Ms. Danks suffered actual physical and emotional injuries,

-17-

and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial.

97.    Ms. Danks is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, prejudgment interest and costs as allowable by federal law.

98.    In  addition to compensatory, economic, consequential and special damages, Ms. Danks is entitled to punitive damages against each of the Bystander Defendants under 42 U.S.C. § 1983, in that the actions of each Bystander Defendant were taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Ms. Danks.

**COUNT III**
**42 U.S.C. § 1983 – Unlawful Arrest in Violation of the Fourth Amendment**
**(Against the Individual Defendants)**

99.    Ms. Danks hereby incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

100.    The Individual Defendants arrested and restrained Ms. Danks against her will by forcibly yanking her from the vehicle.

101.    The Individual Defendants did not obtain a warrant for Ms. Danks' arrest, and otherwise lacked authority to arrest and restrain Ms. Danks because they lacked probable cause to believe she had committed an offense.

102.    At no point prior to the arrest did Ms. Danks engage in any wrongdoing. Ms. Danks sat in the car with her seatbelt fastened and her hands visible in the air holding her phone and her wallet. She attempted to comply with the Individual Defendant's instructions and did not threaten the Individual Defendants, or anyone else for that matter, or attempt to flee.

103.    The Individual Defendants deprived Plaintiff of the rights, privileges, and immunities secured by the Constitution by wrongfully arresting her without probable cause in violation of the Fourth Amendment.

104.    At the time that the Individual Defendants arrested Ms. Danks, they were operating under the color of law. They were wearing uniforms of the Kenner PD and held themselves out as Kenner PD officers.

105.    No reasonable officer in Individual Defendants' position would have believed that probable cause existed to arrest Ms. Danks when she was seated in the vehicle with her hands in the air.

106.    It was clearly established at the time that Ms. Danks was arrested that the Constitution prohibits arrest without probable cause. *See, e.g.*, *Alexander*, 854 F.3d at 306–07. And it was clearly established in the caselaw at the time of Ms. Danks' encounter with Kenner PD that just because there is probable cause to arrest an occupant of a vehicle does not mean that probable exists as to every occupant of the vehicle. *See Ybarra*, 444 U.S. at 91.

107.    The conduct of Individual Defendants thus violated Ms. Danks' clearly established rights, of which reasonable officers knew or should have known.

108.    The Individual Defendants are not entitled to qualified immunity for their conduct, because their arrest of Ms. Danks violated Ms. Danks' clearly established constitutional rights and was objectively unreasonable.

109.    As a direct and proximate result of Individual Defendants' conduct, Ms. Danks suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial.

110.    Ms. Danks is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, prejudgment interest and costs as allowable by federal law.

111.    In addition to compensatory, economic, consequential and special damages, Ms. Danks is entitled to punitive damages against each of the Individual Defendants under 42 U.S.C. § 1983, in that the actions of each Individual Defendant were taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Ms. Danks.

**COUNT IV**
**42 U.S.C. § 1983 - Fabrication of Evidence Under the Fourth Amendment**
**(Against Defendant P. Grayson)**

112.    Ms. Danks hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

113.    Defendant P. Grayson fabricated evidence when he reported that Ms. Danks resisted an officer and bit his finger when, in fact, she did neither.

114.    In an attempt to give credence to the false police report, a photograph of Defendant P. Grayson's finger was taken that supposedly shows the injury sustained. This photograph shows a small scratch on Defendant P. Grayson's finger. There are no bite marks visible on Defendant P. Grayson's finger in the photograph. This small scratch was inappropriately used to justify falsely arresting Ms. Danks for battery against a police officer.

115.    At the time of Ms. Danks' arrest, Defendant P. Grayson had no lawful warrant, had not alleged any wrongful activity on her part, and had no reasonable suspicion that Ms. Danks had done anything wrong or posed a threat to any of the Individual Defendants, Bystander Defendants, or others in the vicinity.

116.    At all relevant times, Defendant P. Grayson was operating under the color of law. He was wearing a uniform of the Kenner PD and held himself out as such.

117.    No reasonable officer in Defendant P. Grayson's situation would have believed that probable cause existed to arrest Ms. Danks for any crime.

118.    Defendant P. Grayson used the fabricated police report and supporting photograph to falsely arrest, charge, and illegally detain Ms. Danks overnight in violation of her Fourth Amendment rights.

119.    Defendant P. Grayson is not entitled to qualified immunity for his conduct, because the falsified report he used to effectuate the arrest of Ms. Danks violated Ms. Danks' clearly established constitutional rights and was objectively unreasonable.

120.    As the direct and proximate result of Defendant P. Grayson's falsified report, Ms. Danks suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial.

121.    Ms. Danks is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, prejudgment interest and costs as allowable by federal law.

122.    In addition to compensatory, economic, consequential and special damages, Ms. Danks is entitled to punitive damages against Defendant P. Grayson under 42 U.S.C. § 1983, in that his actions were taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Ms. Danks.

### COUNT V
### 42 U.S.C. § 1983 - Fabrication of Evidence Under the Fourteenth Amendment
### (Against the Defendant P. Grayson)
### (In the Alternative)

123.    Ms. Danks hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein, and asserts this Count V in the alternative to Count IV.

124.    Defendant P. Grayson deliberately and knowingly falsified a police report by stating that Ms. Danks resisted arrest and bit him when she did not.

125.    As discussed in more detail in the previous count, Defendant P. Grayson's false police report was supplemented with a photograph of Defendant P. Grayson's finger featuring a de minimis or manufactured injury.

126.    At all relevant times, Defendant P. Grayson was operating under the color of law. He was wearing a uniform of the Kenner PD and held himself out as such.

127.    Defendant P. Grayson used the false police report and supporting photograph to cover his own excessive force and to bring the false charge of battery of a police officer against Ms. Danks.

128.    As of the date of filing this Complaint, Ms. Danks still faces the false charge of battery of a police officer in the City of Kenner.

-21-

129.    Defendant P. Grayson's conduct in falsely accusing a person of crimes in order to cover up his own constitutional violations shocks the conscience.

130.    Defendant P. Grayson's false police report is the direct and proximate cause of Ms. Danks' improper arrest and pending false charge, depriving her of her right to substantive due process under the Fourteenth Amendment.

131.    Defendant P. Grayson is not entitled to qualified immunity for his conduct, because the falsified report he used to effectuate the arrest  of Ms. Danks violated Ms. Danks' clearly established constitutional rights and was objectively unreasonable.

132.    As the direct and proximate result of Defendant P. Grayson's falsified report, Ms. Danks suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial.

133.    Ms. Danks is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, prejudgment interest and costs as allowable by federal law.

134.    In addition to compensatory, economic, consequential and special damages, Ms. Danks is entitled to punitive damages against Defendant P. Grayson under 42 U.S.C. § 1983, in that his actions were taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Ms. Danks

## COUNT VI
### 42 U.S.C. § 1983 – Monell Liability for Failure to Train
### (Against City of Kenner and Police Chief Glaser)

135.    Ms. Danks hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

136.    Section 1983 permits municipal liability for inadequate police training where the failure to train amounts to deliberate indifference to the constitutional rights of persons with whom the police come into contact. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Ms. Danks brings this claim against the City of Kenner and Police Chief Glaser for the Kenner

PD's failure to train its police officers and specifically, the Individual Defendants, on how to treat passengers in traffic stops and avoid the excessive use of force.

137.    Police Chief Glaser and the City of Kenner are responsible for the policies and practices of the Kenner PD, including training of Kenner police on avoiding constitutional violations.

138.    Upon information and belief based on records and responses provided by Kenner PD in response to public records requests, Police Chief Glaser and the City of Kenner do not train Kenner PD officers on how to treat passengers during traffic stops.

139.    Upon information and belief based on records and responses provided by Kenner PD in response to public records requests, Police Chief Glaser and the City of Kenner do not train Kenner PD officers on avoiding excessive use of force during traffic stops.

140.    Police Chief Glaser and the City of Kenner failed to train Kenner PD officers on how to properly treat passengers during traffic stops, and avoid the excessive use of force during traffic stops, despite traffic stops being a recurring feature in Kenner PD officers' duties.

141.    A highly predictable consequence of Police Chief Glaser's and the City of Kenner's decision to provide no training to the Kenner police force on how to treat passengers during traffic stops and avoid the excessive use of force during traffic stops, is that Kenner PD officers will violate individuals' Fourth Amendment rights in connection with traffic stops.

142.    Even if Kenner PD had an effective use of force policy in place as of October 10, 2020, Kenner PD nevertheless did nothing to ensure the policy was followed by its officers. Kenner PD's failure to train its officers on how to treat passengers during traffic stops and avoid the excessive use of force during traffic stops caused Ms. Danks' rights to be violated as described above.

143.    Given the frequency with which Kenner PD officers conduct traffic stops, electing to not provide any traffic stop training concerning use of force and treatment of passengers amounts to deliberate indifference to the rights of individuals subjected to the traffic stops,

including Ms. Danks—because the potential for Fourth Amendment violations was obvious and highly predictable to the department.

144.    Upon information and belief based on responses to public records requestes, Defendants City of Kenner and Police Chief Glaser took no action in response to Ms. Danks' complaints about the Kenner PD's violations of her constitutional rights.

145.    By refusing to train and failing to correct the misconduct of Kenner PD officers, Defendants City of Kenner and Police Chief Glaser ratified the other Defendants' misconduct, such that it became *de facto* official policy or custom for law enforcement to engage in misconduct with impunity.

146.    Police Chief Glaser's and City of Kenner's failure to train constitutes their official policy and custom. Given the obvious need to train police officers who routinely conduct traffic stops on the constitutional constraints on the use of force during traffic stops, their failure to train was deliberately indifferent to Ms. Danks' constitutional rights. *See Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 624-25 (5th Cir. 2018). As such, Defendants City of Kenner and Police Chief Glaser are liable to Plaintiff Danks under 42 U.S.C. § 1983.

147.    As the direct and proximate result of Police Chief Glaser's and City of Kenner's lack of training, Ms. Danks suffered actual physical and emotional injuries, and other damages and losses as described herein.

148.    Ms. Danks seeks a declaration that failing to train Kenner PD officers on how to treat passengers and how to avoid excessive force during traffic stops violated her Fourth Amendment rights. She further seeks an injunction requiring Police Chief Glaser and City of Kenner to implement traffic stop training for all Kenner PD officers upon hiring and at least once per year thereafter.

## COUNT VII
### Declaratory Judgment Pursuant to 28 U.S.C. § 2201
### (Against all Defendants)

149. Ms. Danks hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

150. There is an actual controversy between the parties relating to their legal rights and duties under the U.S. Constitution.

151. In particular, Ms. Danks asserts that the conduct of the Individual Defendants, Bystander Defendants, Police Chief Glaser and City of Kenner, as alleged herein violated her rights under the Fourth and/or Fourteenth Amendments.

152. Ms. Danks therefore seeks a declaration of the rights and duties of the parties under the U.S. Constitution pursuant to 28 U.S.C. § 2201 and requests a speedy hearing pursuant to Rule 57 of the Federal Rules of Civil Procedure.

## STATE CLAIMS

## COUNT VIII
### False Imprisonment and False Arrest
### (Against the Individual Defendants)

153. Ms. Danks hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

154. The Individual Defendants intentionally seized Ms. Danks against her will and held her captive. At all times, Ms. Danks was conscious that she was unable to leave the Individual Defendants' presence, or the Kenner PD premises once there, due to the Individual Defendants' display of police authority.

155. The Individual Defendants did not obtain a warrant for Ms. Danks' arrest and otherwise lacked statutory authority to arrest and restrain her. The Individual Defendants did not have articulable facts on which to base a reasonable suspicion that Ms. Danks had committed any offense nor probable cause to believe than an offense had occurred.

-25-

156.    As a direct and proximate result of the Individual Defendants' false imprisonment and false arrest of Ms. Danks, Ms. Danks suffered actual physical, emotional, and economic harm and is entitled to damages in an amount to be proven at trial.

**COUNT IX**
**Assault**
**(Against the Individual Defendants)**

157.    Ms. Danks hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

158.    Ms. Danks asserts violations of Louisiana law relative to intentional torts by the Individual Defendants, all of whom were acting at all relevant times under the color of state law and within the course and scope of their employment with the Kenner PD.

159.    The Individual Defendants intentionally threatened to cause Ms. Danks physical injury when they rushed in an aggressive fashion towards the passenger side of the car, where Ms. Danks was sitting, yelled at her, and then proceeded to grab and violently remove her while her seatbelt was still buckled and in a manner that caught her foot in the door.

160.    Ms. Danks was in reasonable apprehension of physical injury when the Individual Defendants rushed in an aggressive fashion towards the passenger side of the car, where Ms. Danks was sitting, yelled at her, and then proceeded to grab and violently remove her.

161.    As a direct and proximate result of this assault, carried out in reckless disregard and without justification, Ms. Danks suffered actual physical, emotional, and economic harm, and is entitled to damages in an amount to be proven at trial.

**COUNT X**
**Battery**
**(Against the Individual Defendants)**

162.    Ms. Danks hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

163.    Ms. Danks asserts violations of Louisiana law relative to intentional torts by the Individual Defendants, all of whom were acting at all relevant times under the color of state law and within the course and scope of their employment with the Kenner PD.

164.    The Individual Defendants intentionally infliced use of force against Ms. Danks, from the moment they violently pulled her from the vehicle by her shirt, hair, and leg and threw her to the ground, and stepped on her even after she was handcuffed and pinned to the ground.

165.    As a direct and proximate result of this battery, carried out in reckless disregard and without justification, Ms. Danks suffered actual physical, emotional, and economic harm, and is entitled to damages in an amount to be proven at trial.

### COUNT XI
### Conversion
### (Against the Individual Defendants)

166.    Ms. Danks hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

167.    It is well established that "[p]roperty seized in connection with a criminal proceeding which is not to be used as evidence or is no longer needed as evidence shall be returned to the owner." *Thomas v. St. Charles Parish*, 613 So.2d 698, 699 (La. Ct. App. 1993) (quoting *Jordan v. City of Baton Rouge*, 529 So.2d 412, 414 (La. Ct. App. 1989); La. R.S. 15:41.

168.    Every jail and police station are legally obligated to keep a list of property taken from arrestees. La. C. Cr. P. Art. 228 (2019).

169.    On October 11, 2020, the Individual Defendants intentionally took possession of Ms. Danks' cell phone and wallet. They never returned these items to Ms. Danks and, upon information and belief based on the records produced by the Kenner PD, they did not log them into evidence.

170.    At all times related to this action, Ms. Danks was the legal owner of the cell phone and wallet that the Individual Defendants seized. By seizing and permanently depriving

-27-

Ms. Danks of possession of her property, the Individual Defendants committed the tort of conversion.

171.  The Individual Defendants' continued exercise of dominion over Ms. Danks' property is not within the scope of their lawful powers and duties.

172.  Although Individual Defendants deny having custody of Ms. Danks' possessions, some of the contents of the wallet they claim not to have possessed were later returned to Ms. Danks.

173.  As a direct and proximate result of this conversion, Ms. Danks suffered actual economic harm and is entitled to damages in an amount to be proven at trial.

**COUNT XII**
**Intentional Infliction of Emotional Distress**
**(Against the Individual Defendants)**

174.  Ms. Danks hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

175.  Ms. Danks asserts violations of Louisiana law relative to intentional torts by the Individual Defendants, all of whom were acting at all relevant times under the color of state law and within the course and scope of their employment with the Kenner PD.

176.  Almost simultaneously while shouting at Ms. Danks and without giving Ms. Danks time to step out of the vehicle, the Individual Defendants violently grabbed Ms. Danks from the passenger seat in which she was sitting with her hands raised and proceeded to yank Ms. Danks out of the car. During the process, Ms. Danks was choked by her still-buckled seatbelt and had her foot stuck in the door as she was pulled from the vehicle once she was eventually free from restraint. The Individual Defendants yanked Ms. Danks from the vehicle is such a way that her pants came down, exposing her private areas and menstruation to many people. The Individual Defendants ignored Ms. Danks' pleas to pull up her pants for a substantial amount of

time. This caused Ms. Danks extreme humiliation and embarassment, as would be expected when a woman's private areas and mestruation exposed.[2]

177.   The Individual Defendants are directly responsible for the physical injuries Ms. Danks suffered to her forearm, and back. On top of her physical injuries, Ms. Danks suffered anguish, humiliation, and severe emotional distress from being pinned to the ground by Defendant Lawler's foot while her pants had fallen from her waist, revealing her underwear and menstruation, and having her pleas for help unheeded for some time.

178.   The aforesaid physical and psychological injuries sustained by Ms. Danks were caused wholly by reason of the intentional and/or reckless acts of the Individual Defendants as described herein.

179.   The Individual Defendants' conduct was extreme and outrageous. They intended that their conduct would cause Ms. Danks emotional distress, or knew that their conduct was substantially certain to cause Ms. Danks severe emotional distress.

180.   As a direct and proximate result of the conduct described herein, Ms. Danks has suffered actual emotional harm and is entitled to damages in an amount to be proven at trial.

---

[2]   The United Nations has established that "[h]uman rights are rights that every human being has by virtue of his or her human dignity. Menstruation is intrinsically related to human dignity[.]" United Nations Population Fund, *Menstruation and human rights – Frequently asked questions*, UNFPA (June 2021). When such basic human dignity is violated, it causes deep emotional distress which some have found is akin to physical torture. *See e.g.*, JAMA and Archives Journals, *Psychological And Physical Torture Have Similar Mental Effects*, SCIENCEDAILY (Mar. 6, 2007) (reporting on a study where several scholars interviewed survivors of torture from Sarajevo in Bosnia and Herzegovina. The study found that aggressive interrogation techniques or detention procedures involving deprivation of basic needs, exposure to adverse environmental conditions, forced stress positions, hooding or blindfolding, isolation, restriction of movement, *forced nudity*, threats, *humiliating treatment* and other psychological manipulations do not appear to be substantially different from physical torture in terms of the extent of mental suffering they cause, the underlying mechanisms of traumatic stress and their long-term traumatic effects); *Fionnuala Ni Aolain, Sexual Torture, Rape, Gender-Based Violence in the Senate Torture Report Just Security*, JUST SECURITY (February 26, 2015) (establishing that forced nudity is now recognized by regional and international criminal courts as reaching the threshold for torture, inhuman, and degrading treatment and as a stand-alone sexual harm).

## COUNT XIII
### Negligent Infliction of Emotional Distress
### (Against the Individual Defendants)

181.    Ms. Danks hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

182.    Ms. Danks asserts violations of Louisiana law relative to negligent torts by the Individual Defendants, all of whom were acting at all relevant times under the color of state law and within the course and scope of their employment with the Kenner PD.

183.    Each Individual Defendant owed a duty to Ms. Danks to conduct traffic stops, arrests, and detentions in a reasonable manner. Despite this duty, the Individual Defendants unnecesarily and violently yanked Ms. Danks from the vehicle, threw her to the ground, and then Defendant Lawler pinned and pressed Ms. Danks into the ground with a foot even after Ms. Danks was already handcuffed. The Individual Defendants pulled Ms. Danks from the vehicle in such a way that her pants came down, exposing her private area and menstruation to the Individual Defendants, Bystander Defendants, and others. Ms. Danks was unable to pull her pants back up and was mortified that onlookers could witness her exposed private parts, especially given that she was menstruating. Each Individual Defendant ignored her pleas to pull up her pants for a significant amount of time. By treating Ms. Danks in this manner, each of the Individual Defendants breached their duty of care to her. This breach of care was both the cause-in-fact and legal cause of Ms. Danks' extensive physical injuries, emotional distress, and resulting damages.

184.    The aforesaid physical and psychological injuries sustained by Ms. Danks were caused wholly by reason of the negligent acts of the Individual Defendants as described herein.

185.    As a direct and proximate result of Individual Defendants' breach of their duty of care, Ms. Danks suffered actual emotional harm and is entitled to damages in an amount to be proven at trial.

## COUNT XIV
### Abuse of Process
### (Against Defendant P. Grayson)

186.    Ms. Danks hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

187.    Defendant P. Grayson committed an abuse of process when he made false allegations in order to procure a criminal prosecution against Ms. Danks.

188.    Defendant P. Grayson had an ulterior motive for his actions. His true motive was not to charge Ms. Danks for battery, but to use the criminal charges against her to preclude her from seeking justice for his and his colleagues' unlawful behavior against her.

189.    Unfortunately, such intentional use of "cover charges" to justify excessive force against people of color is all too common.[3]

190.    Even if Defendant P. Grayson's ulterior motive cannot be proven at this stage, ulterior motive is presumed when there is a finding of an irregular use of process. *See Weldon v. Republic Bank*, 414 So. 2d 1361 (La. App. 2nd Cir. 1982).

191.    Defendant P. Grayson engaged in an irregular use of process as he manufactured allegations in his probable cause affidavit to bring forth charges of resisting an officer and battery of an officer against Mr. Danks. Defendant P. Grayson's probable cause affidavit was based on his false claim that Ms. Danks refused to cooperate with the Defendants, and during the arrest she bit his "finger on his right hand which began to bleed." However, Ms. Danks did not bite him. The evidence presented supports Ms. Danks' version of the facts as the pictures of Grayson's alleged injury show a de minimis injury inconsistent with a bite.

---

[3] *See, e.g.*, Lisa Cacho & Jodi Melamed, *How Police Abuse the Charge of Resisting Arrest*, BOSTON REVIEW, June 29, 2020, http://bostonreview.net/race-law-justice/lisacacho-jodi-melamed-how-police-abuse-charge-resisting-arrest (last visited August 5, 2021); Scott Holmes, *Resisting Arrest and Racism – The Crime of "Disrespect"*, 85 UMKC L. REV. 625 (2017); Jonah Newman, *Chicago police use 'cover charges' to justify excessive force*, CHICAGO REPORTER, Oct. 23, 2018, https://www.chicagoreporter.com/chicago-police-use-cover-charges-to-justifyexcessive-force/ (last visited August 5, 2021).

192.     As a direct and proximate result of Defendant P. Grayson's cover charges against Ms. Danks, Ms. Danks suffered actual physical, emotional, and economic harm and is entitled to damages in an amount to be proven at trial.

## COUNT XV
### Negligence
### (Against the Individual Defendants and the Bystander Defendants)

193.     Ms. Danks hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

194.     The Individual Defendants and the Bystander Defendants owed a duty to Ms. Danks to avoid excessive force and use no more than reasonable force when getting her to exit the vehicle.

195.     Ms. Danks is five feet, two inches tall and weighed at the time of the incident approximately 150 pounds. Before the Incident, Ms. Danks had not been arrested, charged, or convicted of any crimes. At the time of the stop, Ms. Danks remained in the passenger seat with her seatbelt on and her hands in the air, demonstrating that she posed no threat of escape or bodily harm to anyone.

196.     Rather than allowing Ms. Danks time to voluntarily exit the vehicle, the Individual Defendants breached their duty to her when they forcibly grabbed her and pulled her from the passenger seat of the vehicle while she was still belted into the car, choking her.

197.     After unlatching or cutting the seatbelt, the Individual Defendants further breached their duty of care by forcibly removing Ms. Danks, throwing her to the ground, and stepping on her.

198.     The aforesaid physical and psychological injuries sustained by Ms. Danks were caused wholly or exacerbated by the negligent acts of the Individual Defendants and the Bystander Defendants.

-32-

199.    As a direct and proximate result of the acts of the Individual Defendants and the omissions of the Bystander Defendants described therein, Ms. Danks suffered actual physical, emotional, and economic harm. She is entitled to damages in an amount to be proven at trial.

**COUNT XVI**
**Vicarious Liability**
**(Against City of Kenner  and Police Chief Glaser)**

200.    Ms. Danks hereby incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

201.    Under La. R.S. § 9:3921(A), "every master or employer is answerable for the damage occasioned by his servant or employee in the exercise of the functions in which they are employed." The doctrine of vicarious liability may also be imposed for intentional torts. *See* 1 LOUISIANA TORT LAW § 13.01 (2020).

202.    At all relevant times, the Individual Defendants and Bystander Defendants were employed by and/or acting on behalf of Kenner PD. The Kenner PD is a department of the City of Kenner. Defendant Glaser is Police Chief in the City of Kenner and he heads Kenner PD. Kenner police officers act under the direction, control, and supervision of Defendant Glaser.

203.    At all relevant times, the Individual Defendants and Bystander Defendants were acting within their respective capacities, course and scopes of their employment with Kenner PD and/or accomplished the acts stated herein by virtue of their job-created authority.

204.    The Individual Defendants and Bystander Defendants intentionally, negligently, and/or recklessly directly and proximately caused physical and emotional injury to Ms. Danks.

205.    Therefore, Defendants City of Kenner, and Police Chief Glaswer are liable under the laws of vicarious liability, including the doctrine of respondeat superior for the tortious actions and inactions of the Individual Defendants and the Bystander Defendants as described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jacinta Danks respectfully requests that the Court enter judgment in her favor and against Defendants P. Grayson, D. Grayson, Lawler, Gagliano, Hodges, Zurita, Mayer, Fitzmorris, McCormick, Schoen, Glaser, and Defendant City of Kenner, and award the following relief:

A.    Compensatory and special damages (all Counts other than Counts VI and VII);

B.    Declaratory relief under 28 U.S.C. § 2201 that Defendants' conduct violated Ms. Danks' Fourth and/or Fourteenth Amendment rights;

C.    Injunctive relief requiring, among other things, that the City of Kenner and the Kenner Police Chief implement training on how to treat passengers during traffic stops to ensure their constitutional rights are not violated and how to avoid excessive use of force during traffic stops;

D.    Punitive damages under 42 U.S.C. § 1983;

E.    Any and all equitable relief as deemed appropriate by this Court;

F.    Attorney's fees and costs pursuant to 42 U.S.C. § 1988;

G.    Prejudgment interest; and

H.    Any other relief this Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby requests a jury trial in this matter.

Dated: September 30 , 2021

Respectfully submitted,

*/s/  Michael A. Balascio*

Michael A. Balascio, T.A. (Bar No. 33715)
BARRASSO USDIN KUPPERMAN FREEMAN &
  SARVER, L.L.C.
909 Poydras Street, Suite 2350
New Orleans, Louisiana 70112
Telephone: (504) 589-9700
Facsimile: (504) 589-9701
mbalascio@barrassousdin.com

Nora Ahmed (*pro hac vice* to be filed)
AMERICAN CIVIL LIBERTIES UNION OF
  LOUISIANA
1340 Poydras St, Ste. 2160
New Orleans, LA 70112
Telephone: (504) 522-0628
nahmed@laaclu.org

David J. Berger (*pro hac vice* to be filed)
Mikaela Burkhardt (*pro hac vice* to be filed)
Cristina Mora (*pro hac vice* to be filed)
Courtney Reed (*pro hac vice* to be filed)
WILSON SONSINI GOODRICH & ROSATI
  PROFESSIONAL CORPORATION
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (560) 493-6811
dberger@wsgr.com
mburkhardt@wsgr.com
cmora@wsgr.com
Courtney.reed@wsgr.com

*Attorneys for Plaintiff Jacinta Danks*

*1804304_1*

-35-