UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JACINTA DANKS

CIVIL ACTION

VERSUS

NO: 21-1806

PHILLIP GRAYSON, ET AL.

SECTION: "J" (1)

## ORDER & REASONS

Before the court are two motions filed by Defendants: the City of Kenner, former Police Chief Michael J. Glaser, Phillip Grayson, Daniel Grayson and Chase Lawler. The first is a *Motion to Dismiss Pursuant to 12(b)(6)* **(Rec. Doc. 50)** to which Plaintiff has filed an opposition (Rec. Doc. 72) and Defendants have filed a reply (Rec. Doc. 75). The second is a *Motion to for Protective Order* **(Rec. Doc. 51)** to which Plaintiff has filed an opposition (Rec. Doc. 70). Having considered the motion, legal memoranda, record, and appliable law, the Court finds that the motion to dismiss should be granted in part and denied in part, and the motion for protective order should be denied as moot.

## FACTS AND PROCEDURAL BACKGROUND

This case arises from a traffic stop on October 11, 2020 around 12:30a.m. Plaintiff, Jacinta Danks, was the front seat passenger in a vehicle operated by her brother. The vehicle was stopped for an expired temporary paper license plate by Defendant, Officer Phillip Grayson ("P. Grayson"), with the City of Kenner Police Department. When the vehicle was pulled over, it initially stopped, and then, as P. Grayson began to exit his patrol unit, the vehicle accelerated away. After a brief

pursuit, the vehicle came to a stop and the driver, Plaintiff's brother, fled form the car. P. Grayson pursued and ultimately apprehended him.

P. Grayson then returned to the stopped vehicle where Plaintiff and a passenger remained in the backseat. Defendants, Officer Daniel Grayson ("D. Grayson") and Officer Chase Lawler ("Lawler") joined P. Grayson (collectively, "Kenner Officers"). Plaintiff alleges that the Kenner Officers rushed to the passenger side of the car where she was seated, and at least one had their gun pointed at her. She claims that they began yelling at her while she sat with her hands in the air, but she could not make out what they were saying. Plaintiff alleges that she was disoriented and frightened by the Kenner Officers' aggressive shouting and the manner in which they approached the car. This fear, she claims, momentarily paralyzed her, and she found herself unable to immediately speak or open the door. Eventually able to unlock and open the door, Plaintiff alleges that the Kenner Officers reached in and violently grabbed her. According to P Grayson, as he was attempting to unbuckle Plaintiff's seatbelt and remove her from the vehicle, she struggled with him and bit his hand. Once P. Grayson unbuckled her seatbelt, Plaintiff claims the Kenner Officers violently pulled her from the car. As she was being removed from the car, Plaintiff alleges that her foot got caught between the cabin of the car and the car door.

Once removed from the vehicle, Plaintiff claims that the Kenner Officers threw her forcefully face-first to the ground and removed her phone and wallet from her hands. Once her phone and wallet were out of her hands, Plaintiff alleges that her

hands were handcuffed behind her back. While handcuffed and lying face down on the ground, Plaintiff claims that Lawler stepped on her back, pressing her further towards the ground so hard that she could not move. Additionally, after she was removed from the vehicle, Plaintiff alleges that her pants came down, exposing her underwear and menstruation. Because she was handcuffed, Plaintiff claims that she was unable to pull her pants back up, and she remained face down on the ground with Lawler's foot on her back and her pants pulled down for approximately five minutes or more. Plaintiff alleges that she begged the Kenner Officers to pull her pants up, and she squirmed in an attempt to do it herself until someone else pulled them up.

Eventually, Plaintiff claims that she was yanked up, patted down, and read her *Miranda* rights. She was charged with resisting arrest and assaulting an officer. Plaintiff alleges she was put in the back of a police car, barefoot and handcuffed, before her shoes were thrown to her in the back seat. The charge against Plaintiff for resisting arrest was subsequently dismissed, and she was convicted of assaulting P. Grayson on April 21, 2022. Finally, Plaintiff claims that her phone and wallet were never returned to her. As a result of this incident, Plaintiff alleges that she has experienced physical pain, a bruised handprint on her arm that lasted multiple weeks, back pain, and serious emotional trauma.

Plaintiff filed the instant suit against the above-named Kenner Officers; City of Kenner; former Police Chief Michael J. Glaser; and seven "bystander" officers for violations of her federal and state civil rights. The "bystander" officers were

subsequently dismissed by Plaintiff without prejudice. Defendants filed a *Motion to Dismiss, Alternatively, Motion for Summary Judgment* (Rec. Doc. 50), and, in response, Plaintiff filed a *Rule 56(d) Motion to Stay Defendants' Motion for Summary Judgment* (Rec. Doc. 64) asking the Court to deny the summary judgment portion of Defendants' motion and/or stay it pending the close of discovery. The Court granted Plaintiff's motion and denied the summary judgment portion of Defendants' motion as premature (Rec. Doc. 68). Before the Court now is the 12(b)(6) portion of Defendants' motion and their motion for protective order to stay all pre-trial discovery until resolution of the motion to dismiss.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. The court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).  However, "'conclusory allegations or legal conclusions masquerading

as factual conclusions will not suffice to prevent a motion to dismiss.'" *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (citation omitted).

## DISCUSSION

### I. EXCESSIVE FORCE CLAIM

"To establish a claim of excessive force under the Fourth Amendment, plaintiffs must demonstrate: '(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" *Trammell v. Fruge*, 868 F.3d 332, 340 (5th Cir. 2017) (quoting *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009)). Fundamentally, "the touchstone of our inquiry is simply the reasonableness of the force employed." *Buehler v. Dear*, 27 F.4th 969, 981 (5th Cir. 2022). "Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" *Deville*, 567 F.3d at 167 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

The Court will first consider Plaintiff's injury. Generally, to maintain a claim for excessive force, a plaintiff need not demonstrate a significant injury, but the injury must be more than *de minimis. See Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005). Recently, the Fifth Circuit has characterized the injury requirement as "a sliding scale, not a hard cutoff." *Buehler*, 27 F.4th at 982. This approach treats the degree of injury—even if minor—as interrelated to the reasonableness and excessiveness of the officer's force. "[A]lthough a *de minimis* injury is not cognizable, the extent of injury necessary to satisfy the injury requirement is 'directly related to

the amount of force that is constitutionally permissible under the circumstances.'" *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017) (alternation in original) (quoting *Brown v. Lynch*, 524 F. App'x 69, 79 (5th Cir. 2013)). Accordingly, "[a]ny force found to be objectively unreasonable necessarily exceeds the *de minimis* threshold, and, conversely, objectively reasonable force will result in *de minimis* injuries only." *Id.* (quoting *Brown*, 524 F. App'x at 79). In other words, "as long as a plaintiff has suffered 'some injury,' even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force." *Id.* (quoting *Brown*, 524 F. App'x at 79). This means that if the officer's force was unreasonably excessive, Here, Danks need only show "some injury"—a bar which she clears here when she alleges in her Complaint:

> For weeks after the incident and as a result of her treatment, Ms. Danks experienced physical pain, including a bruised handprint on her arm that lasted multiple weeks. Ms. Danks' back pain caused by being thrown to the ground and stepped on is ongoing. Whether sitting or standing, she feels pain in her back. That pain often shoots up from the middle of her back to the top of her shoulders. Ms. Danks also suffered serious emotional trauma and continues to experience mental anguish over her treatment at the hands of the police.

(Rec. Doc. 46, at ¶¶ 58–59).

The Court next considers the amount of force used and the reasonableness of resorting to such force. Courts generally consider these factors together, as "officers must assess not only the need for force, but also 'the relationship between the need and the amount of force used.'" *Deville*, 567 F.3d at 167 (quoting *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999)). In *Graham v. Connor*, the Supreme Court

enumerated three non-exclusive considerations for courts to examine when analyzing the reasonableness of the force used, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396.

Here, the severity of the crime at issue weighs against the officers because Plaintiff's brother, not Plaintiff herself, was pulled over for a traffic violation, and Plaintiff's brother, not Plaintiff herself, fled from the traffic stop. *See Newman v. Guedry*, 703 F.3d 757, 762 (5th Cir. 2012). The Court next considers whether Plaintiff posed an immediate threat to the safety of the Kenner Officers or others. Plaintiff alleges that that she remained seated in the car with her hands up and seatbelt fastened. (Rec. Doc. 46, at ¶ 38). She alleges that in one hand she held her wallet and in the other her cellphone to show that she did not have a weapon. (*Id.*). Plaintiff claims that she remained seated in the car with her seatbelt buckled and her hands up until the Kenner Officers pulled her from the vehicle. (*Id.* at ¶¶ 38–40). However, as P. Grayson unbuckled her seatbelt and pulled her from the car, Plaintiff acknowledges that a struggled ensued, and she bit his hand. (*Id.* at ¶ 43). Lastly, for the third factor, in evaluating whether Plaintiff was resisting arrest, case law distinguishes between active and passive resistance. "[W]here an individual's conduct amounts to mere 'passive resistance,' use of force is not justified." *Trammell*, 868 F.3d at 341. Here, Plaintiff alleges that she remained seated in the car with her hands up and seatbelt fastened while P. Grayson chased and subsequently apprehended her

brother. (Rec. Doc. 46, at ¶ 38). She alleges that in one hand she held her wallet and in the other her cellphone to show that she did not have a weapon. (*Id.*). Nonetheless, when P. Grayson, D. Grayson, and Lawler approached the car, they, in Plaintiff's words, "rushed to the passenger side of the car." (*Id.* at ¶ 39). Plaintiff claims that they yelled at her, and one officer pointed a gun while she remained in her seat with her hands up. (*Id.*). Plaintiff alleges that she could not make out what they were saying, but she eventually managed to unlock and open the door despite her paralysis from fear. (*Id.* at ¶ 40). Once she did open the car door, Plaintiff alleges that the Kenner Officers reached in, grabbed her, and pulled her from the vehicle. (*Id.* at ¶ 40–42). Plaintiff claims that she was "grabbed and pulled by her hair, shirt, and leg out of the vehicle, causing her to be choked by the seatbelt." (*Id.* at ¶ 4). In this series of events, Plaintiff acknowledges that she bit P. Grayson's hand. (*Id.* at ¶ 43).

Although not listed in the *Graham* factors, courts also consider the speed with which officers resort to force. *See, e.g., Trammell*, 868 F.3d at 342 ("[T]he quickness with which the officers resorted to tackling Trammel [*sic*] to the ground militates against a finding of reasonableness."). This is because "an officer must use force with measured and ascending actions that correspond to a suspect's escalating verbal and physical resistance." *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 332–33 (5th Cir. 2020) (cleaned up). Here, Plaintiff alleges that after she opened her car door, the Kenner Officers "made no attempt to negotiate or even converse with Ms. Danks to find out if she was okay and physically able to unbuckle her seatbelt and step out

of the car." (Rec. Doc. 46, at ¶ 41). She claims that they immediately reached in to unbuckle her seatbelt and "violently pulled her from the car." (*Id.* at ¶¶ 40–44).

Taking these considerations together, the Court concludes that Plaintiff has sufficiently alleged facts that show that the actions of P. Grayson, D. Grayson, and Lawler were objectively unreasonable as to violate her constitutional rights. First, Plaintiff's essentially *de minimus* injuries weigh against a finding of excessive force. She alleges that the actions of the officers have resulted in bruising, back pain, and emotional trauma. Nonetheless, Plaintiff has sufficiently alleged facts that support a finding that the *Graham* factors weigh in her favor. Plaintiff alleges that she was not the one pulled over for the traffic stop. She alleges that she remained seated in the car with her seatbelt buckled and hands up. When the Kenner Officers approached her, she alleges that she remained with her hands up despite their yelling and pointing a gun at her. When she opened the car door, she alleges that they immediately reached in, grabbed her, and pulled her from the vehicle. Nonetheless, she does acknowledge that she bit P. Grayson as she was being violently pulled from the car. However, the Kenner Officers never once, she alleges, attempted to negotiate or talk with her. Finally, once she was out of the car, Plaintiff alleges that the Kenner Officers threw her forcefully face-first to the ground and her hands were handcuffed behind her back. (Rec. Doc. 46, at ¶ 46). While handcuffed and lying face down on the ground, Plaintiff claims that Lawler stepped on her back, pressing her further towards the ground so hard that she could not move. (*Id.* at ¶ 47). Additionally, after she was removed from the vehicle, Plaintiff alleges that her pants came down,

9

exposing her underwear and menstruation. (*Id.* at ¶ 48). Because she was handcuffed, Plaintiff claims that she was unable to pull her pants back up, and she remained face down on the ground with Lawler's foot on her back and her pants pulled down for approximately five minutes or more. (*Id.* at ¶¶ 49–50). Additionally, Plaintiff alleges that she begged the Kenner Officers to pull up her pants, but they did not do so. (*Id.* at ¶ 51). Instead, she claims that she lay pinned down like an animal with her private areas and menstruation exposed. (*Id.* at ¶ 7).

Plaintiff has sufficiently alleged facts that P. Grayson, D. Grayson, and Lawler's actions were unreasonable given her lack of criminal activity; minimal threat to the officers or others; passive resistance; and the speed within which the officers resorted to force.

### A. *Heck v. Humphrey*

Nevertheless, P. Grayson and D. Grayson argue that the excessive force claims against them are barred by *Heck v. Humphrey*. (Rec. Doc. 50-3, at 13).[1] According to P. Grayson, as he was attempting to unbuckle Plaintiff's seatbelt and remove her from the car, she struggled with him and bit his hand. (Rec. Doc. 46, at ¶ 43). Plaintiff was convicted of assaulting P. Grayson. (*Id.* at ¶ 57).

The Supreme Court in *Heck v. Humphrey* barred any § 1983 claim that effectively attacks the validity of a conviction or imprisonment until the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared

---

[1] Defendants make no attempt to argue that the excessive force claim against Lawler is barred by *Heck*.

invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. 477, 487 (1994). Thus, the key inquiry is "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction." *Id.*

Pursuant to *Heck*, the Fifth Circuit has previously determined that the conviction of a battery of an officer under Louisiana law prohibits an excessive force claim arising from the same incident. *Hudson v. Hughes*, 98 F.3d 868, 873 (5th Cir. 1996). State law recognizes self-defense as a justification for battery of an officer, and a criminal defendant can prevail by showing that the use of force against an officer was reasonable and necessary to prevent a forcible offense against himself. *Id.* (citing *Louisiana v. Blancaneaux*, 535 So. 2d 1341 (La. App. 5 Cir. 1988)). Since the excessive force claim turns on whether officers used unreasonable force in effectuating the arrest, it places the defendant's own resistance into question. *Id.* If the officers' use of force was unreasonable because the defendant was justified in resistance, these facts necessarily call into question the validity of the battery conviction. *Id.* Nonetheless, as long as success on Plaintiff's excessive force claim will not demonstrate the invalidity of her conviction, the excessive force claim should be allowed to proceed. "Determining whether a particular claim is barred by *Heck* is 'analytical and fact-intensive' and requires the court to consider the specifics of the individual claim. *Smith v. Hood*, 900 F.3d 180, 185 (5th Cir. 2018) (citing *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008)).

The court conducts this analysis by assessing whether a claim is "temporally and conceptually distinct" from the related conviction and sentence. *See, e.g., Bush*, 513 F.3d at 498. The court asks whether the claims are "necessarily inconsistent" with the conviction, or whether they can "coexist" with the conviction or sentence without "calling [it] into question." *Ballard v. Burton*, 444 F.3d 391, 400–01 (5th Cir. 2006). Thus, "a claim that excessive force occurred after the arrestee has ceased his or her resistance would not necessarily imply the validity of a conviction for the earlier resistance." *Id.* But, if the excessive force claim stems from "a single violent encounter," then the conviction bars recovery. *DeLeon v. City of Corpus Christi*, 488 F.3d 649, 656–57 (5th Cir. 2007). Here, Plaintiff's Complaint attempts to draw such a distinction.

Plaintiff argues that her battery conviction arises out of the Kenner Officers rushing to the passenger side of the vehicle where she was seated and ordering her out. (Rec. Doc. 72, at 10–11). Disoriented and frightened, Plaintiff contends that she was momentarily paralyzed and unable to immediately open the door. (*Id.* at 11). Once the door was opened, Plaintiff asserts that as P. Grayson reached in to unbuckle her seatbelt and remove her from the vehicle, he was bitten in the struggle to remove Plaintiff from the car. (*Id.*). It is this interaction, Plaintiff avers, that resulted in her battery conviction. (*Id.*). The following series of events, Plaintiff argues, is what led to her excessive force claim and violation of her constitutional rights. (*Id.*). Once removed from the car, she contends that the Kenner Officers threw her body to the ground, and they handcuffed her there. (*Id.*). Lawler then stepped on her back,

Plaintiff contends, pinning her to the ground so that she could not move. (*Id.*). It was this series of being thrown from the car to the ground that additionally caused, she asserts, her pants to come down to expose her private areas and menstruation. (*Id.*). Plaintiff avers that nothing about her battery conviction would be undermined by a finding that the Kenner Officers used excessive force in throwing her to the ground, handcuffing her face down on the ground, standing on her, and exposing her. (*Id.*).

In *Pratt v. Giroir*, the court reasoned that *Heck* did not bar the plaintiff's excessive force claim "[s]ince the Court cannot rule out the possibility that excessive force was used after [the plaintiff's] battery on the officers had been completed and when she was no longer resisting them, Defendants' motion to dismiss is denied." *Pratt v. Giroir*, No. 07-1529, 2008 WL 975052, at *6 (E.D. La. Apr. 8, 2008). In her complaint, the plaintiff alleged that she "was gratuitously pepper-sprayed and beaten after she was handcuffed, subdued, placed on the ground and long past the point in which any resistance was attempted." *Id.* at *5. However, in another section of her complaint, the plaintiff alleged that the officer "threw her to the ground and pepper sprayed, handcuffed her and threw her into a police car with unnecessary force . . . ." *Id.* Therefore, the court found that it could not determine at the 12(b)(6) stage "whether force was used only while officers were subduing [the plaintiff] or whether excessive force was used after she had already been subdued," so it denied the motion to dismiss. *Id.* at *6.

Moreover, in *Curran v. Aleshire*, the court reasoned that *Heck* did not bar the plaintiff's excessive force claim because "the action giving rise to the conviction was

a swing at the officer which was followed by the events giving rise to the claims of excessive force." *Curran v. Aleshire*, 67 F. Supp. 3d 741, 749 (E.D. La. 2014). The court held that "[c]onsidering this timing, the Court finds that there exists a disputed issue of material fact as to whether the events were conceptually distinct, and whether a successful excessive force claim 'would necessarily imply the invalidity of [her] conviction.'" *Id.* Additionally, in *Aswell v. Culpepper*, the court found that the plaintiff's "claim that defendants used excessive force when they allegedly beat and kicked him after he was handcuffed and non-resistant is factually and conceptually distinct from the conduct that led to his convictions and the force that defendants used to bring [the plaintiff] into their custody prior to his handcuffing." *Aswell v. Culpepper*, No. 12-997, 2015 WL 1638094, at *9 (E.D. La. Apr. 13, 2015). The court reasoned that an officer using excessive force after subduing a plaintiff is distinguishable from an officer using alleged excessive force to bring a plaintiff into submission. *Id.*

In contrast, in *Sampy v. Rabb*, the court observed that the plaintiff's battery of the officer occurred simultaneously with the officer pulling the plaintiff from the hood of a car onto the ground where he cut his chin because he kicked the officer during the struggle. *Sampy v. Rabb*, 19-580, 2021 WL 5279480, at *6 (W.D. La. Aug. 26, 2021), report and recommendation adopted as modified, No. 19-580, 2021 WL 4471621 (W.D. La. Sept. 29, 2021) (modified as to the First Amendment retaliation claim). Thus, the court found "that any claims arising out of excessive force up to that moment are barred by *Heck*." *Id.* However, the court reasoned that it was less clear

14

if the conduct thereafter, such as the officer kneeling on the plaintiff, were precluded under *Heck*. *Id*.

Accordingly, the question before the Court is where to draw the line, if any, between when Plaintiff was subdued and when the Kenner Officers were still actively bringing her into submission. Plaintiff argues that she was subdued after she was removed from the vehicle but before the Kenner officers "threw her body forcefully face-first to the ground." (Rec. Doc. 72, at 11). She contends that throwing her to the ground and stepping on her, both of which caused her pants to come down, amounts to excessive force separate from her battery of P. Grayson. (*Id*.). She asserts that her conviction for battery of P. Grayson would not be undermined by a finding that after her struggle with P. Grayson in which she was out of the car and restrained, the Kenner Officers then used excessive force. (*Id*.).

The problem that arises in the Court's view, however, is that Plaintiff was not handcuffed until after she was on the ground. Plaintiff alleges that the Kenner Officers "threw her body forcefully face first to the ground. One of the [Kenner Officers] removed Ms. Danks' phone and wallet from her hands and then proceeded to handcuff her hands behind her back." (Rec. Doc. 46, at ¶ 46). Unlike the court in *Pratt* which could not determine whether force was used only while the officers subdued the plaintiff, in this case, Plaintiff has alleged that she was first thrown the ground and then subdued with handcuffs. It is clear by her pleading that Plaintiff was not subdued until after this use of force by the Kenner Officers. Although Plaintiff appears to allege that she was non-resistant once she was out of the car and

when she was thrown to the ground, she had just bitten P. Grayson, and she was not

yet in handcuffs. Therefore, the Court finds that the excessive force claims against P.

Grayson and D. Grayson are barred by *Heck*. As to Lawler, like the officer in *Sampy*

who kneeled on the plaintiff after he was handcuffed, Lawler stepped on Plaintiff

while she was laying face down on the ground in handcuffs with her pants down. *Heck*

does not bar Plaintiff's excessive force claim against him.

### B. Qualified Immunity

Next, Lawler argues that he is entitled to qualified immunity. (Rec. Doc. 50-3, at

18–21). "Qualified immunity shields public officials sued in their individual capacities

from liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would

have known." *Kokesh v. Curlee*, 14 F.4th 382, 391 (5th Cir. 2021) (cleaned up).

> The qualified immunity inquiry includes two parts. In the first we ask
> whether the officer's alleged conduct has violated a federal right; in the
> second we ask whether the right in question was "clearly established" at
> the time of the alleged violation, such that the officer was on notice of
> the unlawfulness of his or her conduct.

*Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019) (en banc). The court need not decide

the first question before the second, and it may decide the case solely on the basis

that the right was not clearly established. *Pearson v. Callahan*, 555 U.S. 223, 236–37

(2009). The Court examines each officer's actions independently to determine

whether he is entitled to qualified immunity. *Meadours v. Ermel*, 483 F.3d 417, 421–

22 (5th Cir. 2007). Therefore, having found that the actions of the Kenner Officers,

together, constituted excessive force, the Court will now look at the individual actions of Lawler for the qualified immunity analysis.

First, the Court will address whether Lawler violated Plaintiff's federal right to be free from excessive force under the Fourth Amendment when he stepped on her back while her pants were down after she was handcuffed. Because the Court has detailed the applicable law, above, it will not do so here. First as to her alleged injury, Plaintiff claims that being stepped on caused her back pain and serious emotional trauma and mental anguish. (Rec. Doc. 46, at ¶ 58–59). Second, the Court will examine the *Graham* factors. As to the severity of the crime at issue, Plaintiff had just bitten another officer. (*Id*. at ¶ 43). Next, as to whether the suspect poses an immediate threat to the safety of the officers or others, Plaintiff alleges that she was handcuffed and lying face down on the ground. (*Id*. at ¶ 47). Moreover, Plaintiff claims that her pants were down, exposing her underwear and menstruation, and her sole focus was pulling her pants back up. (*Id*. at 48–49). Next, as to whether the plaintiff is actively resisting arrest or attempting to evade arrest by flight, Plaintiff alleges that she squirmed on the ground for an extended period of time trying to get her pants back up. (*Id*. at ¶ 51). In conjunction with this "squirming" Plaintiff claims that she begged the Kenner Officers and others around her to pull her pants up. (*Id*.). Finally, the Court will consider the speed within which Lawler resorted to force. Plaintiff alleges that Lawler stepped on her back almost immediately after she was handcuffed and lying on the ground. (*Id*. at ¶ 47).

In evaluating Plaintiff's claim for excessive force against Lawler, the Court finds that Plaintiff has sufficiently pled facts to show he used excessive force in violation of her constitutional rights. Although Plaintiff's injuries are *de minimus* and she had just bitten an officer, she was lying face-first on the ground in handcuffs with her pants down. She no longer posed any threat to an officer or anyone else because she was subdued and restrained. While her squirming could have been construed as resisting arrest, in conjunction with her alleged pleas for help and her own efforts to get her pants back up, a reasonable officer would understand what Plaintiff was attempting. Finally, per Plaintiff's claims, Lawler immediately stepped on her back and pushed her into the ground so hard that she could not move. Therefore, Lawler violated Plaintiff's federal right to be free from excessive force under the Fourth Amendment.

Next, the Court will turn to the "clearly established" prong of the analysis. To determine that a right is clearly established the court "must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011) (en banc) (cleaned up). "Although this does not mean that 'a case directly on point' is required, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Trammell*, 868 F.3d at 339 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). The precedent must also be at "a sufficiently high level of specificity to put a reasonable official on notice

that his conduct is definitively unlawful." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015).

It appears that the Fifth Circuit has not addressed a fact pattern precisely on point, but it has repeatedly held that "the use of certain force after an arrestee has been restrained and handcuffed is excessive and unreasonable." *Bush*, 513 F.3d at 501–02.  In *Bush v. Strain*, the Fifth Circuit held that a police officer used excessive force that was objectively unreasonable and in violation of clearly established law when he forcefully slammed a suspect's face into a vehicle after subduing her and placing her in handcuffs. *Bush*, 513 F.3d at 501–02. In *Cooper v. Brown*, the Fifth Circuit found that permitting a dog to continue biting a compliant and non-threatening arrestee is objectively unreasonable. *Cooper v. Brown*, 844 F.3d 517, 524 (5th Cir. 2016). The arrestee was arrested for the serious crime of driving under the influence, but he posed no immediate threat to the officers and was not actively resisting arrest or attempting to flee. *Id.* at 522–23. On the other hand, the Fifth Circuit held the use of a taser was not excessive where the arrestee was resisting arrest and the officers ceased use of the taser once the arrestee was handcuffed and subdued. *Poole v. City of Shreveport*, 691 F.3d 624, 626 (5th Cir. 2012). Notably, "[l]awfulness of force . . . does not depend on the precise instrument used to apply it." *Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012).

Here, like the arrestees in *Bush* and *Cooper*, Plaintiff was restrained face-first on the ground and handcuffed when Lawler allegedly stepped on her back, pressing his foot into her so hard that she could not move for approximately five minutes. The

fact that there is no precise fact pattern in line with Plaintiff's allegations does not render the Fifth Circuit's guidance that "the use of certain force after an arrestee has been restrained and handcuffed is excessive and unreasonable" moot. Therefore, the Court finds that when Lawler allegedly stepped on Plaintiff, he was on notice that his conduct was unlawful, and he is not entitled to qualified immunity.

## II.   FAILURE TO TRAIN

### A. Former Police Chief Glaser

Defendants argue that a "failure to train" claim brought against a government official in his official capacity is the equivalent of a suit against the governmental entity. (Rec. Doc. 50-3, at 26). Hence, a claim of this nature brought against the governmental official and the governmental entity, Defendants contend, are a single claim in which the suit against the governmental official is subsumed within his claim against the governmental entity. (*Id.*). In response, Plaintiff does not dispute that her *Monell* claim against former Chief Glaser in his official capacity is no different than her claim against the City of Kenner, but she asserts that her claim against former Chief Glaser should not be dismissed at this stage because her allegations of multiple presumptive policy makers are adequate at the pleading stage. (Rec. Doc. 72, at 16–17 n.6).

"A suit against a governmental officer 'in his official capacity' is the same as a suit 'against [the] entity of which [the] officer is an agent, and victory in such an 'official-capacity' suit 'imposes liability on the entity that [the officer] represents.'" *McMillan v. Monroe Cnty, Ala.*, 520 U.S. 781, 785 n.2 (1995) (citations omitted) (cleaned up). Thus, when a plaintiff sues both a governmental officer in his official capacity and a governmental entity for an identical claim, the claim against the officer is "subsumed within [the plaintiff's] identical claim against [the government entity]." *Goodman v. Harris Cnty.*, 571 F.3d 388, 396 (5th Cir. 2009). However, as this Court has previously stated,

> Plaintiff['s] claims might well be duplicative, but the Court sees no reason to make that determination at this early stage. The Court defers the decision of whether to dismiss the claims against Chief Smith in his official capacity as duplicative until a later date. However, the Court notes that it will judge claims asserted against Chief Smith in his official capacity under the same standard as claims asserted against the City.

*Sherman v. Irwin*, No. 17-4061, 2018 WL 3632360, at *5 (E.D. La. July 31, 2018). Accordingly, the Court will not dismiss the failure to train claim against former Police Chief Glaser at this stage of the litigation, and it will defer that decision until a later date. Nonetheless, it will judge the failure to train claim against former Chief Glaser in his officially capacity under the same standard as the claim asserted against the City of Kenner.

## B. City of Kenner

While neither state officials nor municipalities are vicariously liable for the deprivation of constitutional rights by employees, each can be held liable for their

own acts or failures to act which themselves cause constitutional violations. S*ee Monell v. Dep't of Social Services of City of N.Y.*, 436 U.S. 658, 694 (1978). Therefore, a common claim alleged against municipalities and state officials is that a failure to train or supervise an employee was the ultimate cause of a plaintiff's injury. *See, e.g., Goodman*, 571 F.3d at 395. Here, Plaintiff alleges that former Police Chief Glaser and the City of Kenner are liable under *Monell* because they failed to train police officers with the City of Kenner Police Department how to treat passengers during traffic stops. (Rec. Doc. 72, at 16). In opposition, former Chief Glaser and the City of Kenner argue that the claims against them for failure to train must be dismissed because Plaintiff makes conclusory allegations that fail to state any factual basis that they acted with deliberate indifference or that the absence of training was the moving force behind Plaintiff's alleged constitutional violation. (Rec Doc. 50-3, at 28).

In a § 1983 claim for failure to supervise or train, the plaintiff must show that: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Goodman*, 571 F.3d at 395–96 (citation omitted).

To establish deliberate indifference, "a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003) (internal quotation omitted). Without establishing a pattern, a plaintiff may survive a motion to dismiss, only "in a limited set of cases" that are egregious,

because "the risk of constitutional violations was or should have been an obvious or highly predictable consequence of the training inadequacy." *Littell v. Houston Indep. Sch. Dist.*, No. 16-20717, 2018 WL 3149148, at *5 (5th Cir. June 27, 2018). (internal marks and citations omitted). A broad assertion that a training program is ineffective will not be sufficient; rather, "a plaintiff must allege with specificity how a particular training program is defective." *Goodman*, 571 F.3d at 395–96. The focus of the inquiry is on how the training program inadequately prepared an officer for the tasks he must perform. *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005). Essentially, what Plaintiff here must ultimately prove is that she was injured by the Kenner Officers because former Chief Glaser and the City of Kenner had a policy not to adequately train its employees on how to treat passengers during traffic stops. *City of Canton v. Harris*, 489 U.S. 378, 390 (1989) (framing the central question as "whether such inadequate training can justifiably be said to represent 'city policy.'").

Here, the Court will begin with the adequacy of the City of Kenner's training policies. Plaintiff alleges that a public record request was sent on July 14, 2021 to the Kenner Police Department via e-mail and U.S. Certified Mail. (Rec. Doc. 46, at ¶ 67). Specifically, Plaintiff claims that she sought records from 2018 to present documenting any (1) formal trainings that the Kenner Police Department officers received in relation to the treatment of passengers during traffic stops and all related course materials; and (2) formal trainings that the Kenner Police Department officers received in relation to excessive force during traffic stops and all related course materials. (*Id.*). Plaintiff alleges that on August 10, 2021, the Kenner Police

Department responded that they were unable to provide documents in response to these requests because they do not exist. (*Id.* at ¶ 68). The Court finds Plaintiff has sufficiently alleged the inadequacy of the City of Kenner's training polices in regard to traffic stops because a policy that does not exist is inadequate on its face.

Next, Plaintiff must plead sufficient facts to show that the City of Kenner was deliberately indifferent. Plaintiff alleges that since January 1, 2018, there have been numerous complaints concerning use of force filed with the Kenner PD. (Rec. Doc. 46, at ¶ 65). Specifically, Plaintiff cites to three examples: (1) Officer Zurita had a complaint for inappropriate use of physical force in October 2016; (2) P. Grayson had a complaint for alleged excessive force/ disputed arrest on October 11, 2020; and (3) Lawler had a complaint for alleged false arrest/ use of force in April 2021. (*Id.* at ¶ 66). Additionally, the single incident exception may apply here where, as Plaintiff claims, the Kenner Police Department does not just have an inadequate training policy but completely lacks formal training. As Plaintiff alleges, traffic stops are frequent occurrences in a police officer's job, and as Plaintiff sufficiently pleads, the risk of constitutional violations was or should have been an obvious or highly predictable consequence when there is no training at all. (*Id.* at ¶¶ 97, 99). Given the fact that this issue is before the Court on a 12(b)(6) motion, the Court finds that Plaintiff's factual allegations in her complaint are "enough to raise a right to relief above the speculative level" regarding deliberate indifference.

Finally, Plaintiff must plead sufficient facts to show that the inadequate training policy directly caused her injuries. Plaintiff has alleged sufficient facts to

show that she was subject to excessive force during a traffic stop, and she has alleged that the Kenner Police Department lacks any formal training addressing passengers during traffic stops and excessive force. The Court, drawing all reasonable inferences in favor of Plaintiff, finds that she has sufficiently alleged facts to support a failure to train claim against former Police Chief Glaser and the City of Kenner.

## III.   DECLARATORY JUDGMENT

For a district court to have jurisdiction to issue a declaratory judgment, two conditions must be satisfied. First, the dispute must be a "case or controversy" within the confines of Article III of the United States Constitution. *Lowe v. Ingalls Shipbuilding, A Division of Litton*, 723 F.2d 1173, 1179 (5th Cir. 1984). Second, the trial court, in its discretion, must be satisfied that declaratory relief is appropriate. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations omitted). "To establish standing under Article III of the Constitution, a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Crawford v. Hinds Cnty. Bd. of Supervisors*, 1 F.4th 371, 375 (5th Cir. 2021) (quoting *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020)). "[P]laintiffs seeking injunctive and declaratory relief can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury." *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019). That threatened future injury "must be an injury in fact." *Id.* (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). That means, as relevant here,

that the injury must be "'imminent' . . . 'to ensure that the alleged injury is not too speculative for Article III purposes.'" *Id.* at 721 (quoting *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013)). "For a threatened future injury to satisfy the imminence requirement, there must be at least a 'substantial risk' that the injury will occur." *Id.* (quoting *Susan B. Anthony List*, 573 U.S. at 158). "[P]ast wrongs [are] evidence" of the likelihood of a future injury but "do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).

Here, Defendants argue that Plaintiff does not have standing because she has not sufficiently alleged a future injury, a continuing harm, or an immediate threat of repeated injury. (Rec. Doc. 50-3, at 31). In opposition, Plaintiff contends, with reliance upon *Crawford v. Hinds County Board of Supervisors*, that when a plaintiff has already been harmed by the defendants' conduct, prospective relief is available if either the plaintiff is suffering a continuing harm as a result of the past alleged illegal conduct or the plaintiff faces a real and substantial risk that she will be wronged again. (Rec. Doc. 72, at 25) (citing *Crawford*, 1 F.4th at 375).

To succeed on her declaratory judgment claim, Plaintiff must sufficiently allege a real and immediate threat that she will again be a passenger in a car in the City of Kenner that is the subject of a traffic stop and the traffic stop will result in excessive force against her person. Plaintiff relies on two allegations from her Complaint to show that she has alleged an immediate threat of repeated injury: (1) "Ms. Danks has ties to the Kenner area, such as the location of her brother's grave within a few miles

of where the incident occurred, and a church attended by relatives of Ms. Danks," Rec. Doc. 46, at ¶ 11); and (2) "[t]he area of Kenner, Louisiana is known for racial profiling and the use of excessive force by police," (*id.* at ¶ 64). The Court finds that these allegations do not sufficiently allege a real and immediate threat that Plaintiff will again be subject to excessive force at the hands of the Kenner Police Department. Plaintiff, as a citizen and resident of Missouri, alleges neither how frequently she is in the area nor that she even visits the area regularly. Moreover, her allegations that Kenner is known for racial profiling and use of excessive force are conclusions which lack facts that would allow the Court to draw the reasonable inference that the City of Kenner and the Kenner Police Department are known for racial profiling and use of excessive force.

## IV. STATE CLAIMS

Plaintiff additionally alleges a litany of state law claims. (Rec. Doc. 46, at ¶¶ 109–49). These state law claims all stem from the same series of events underlying her excessive force claim under § 1983. Louisiana applies the *Heck* rationale to state law tort claims. *Williams v. Harding*, 117 So. 3d 187, 191 (La. App. 1 Cir. 2013). As with the excessive force claim, the state law claims of assault, battery, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, and vicarious liability imply the invalidity of the underlying conviction. Since Plaintiff has failed to distinguish these torts from the factual basis for the battery conviction, they are inseparable and *Heck*-barred as to P. Grayson and D. Grayson. *DeLeon*, 488 F.3d at 657. As to Lawler, the state law claims are not *Heck*-barred.

### A. Assault and Battery

Under Louisiana law, "[a]ssault is an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery." La. Rev. Stat. Ann. § 14:36; *see also Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1135 (5th Cir. 2014) (defining assault as "the imminent threat of a battery" (citation omitted)). Although mere words do not constitute an assault, when used in combination, threats, present ability to carry out the threats, and reasonable apprehension of receiving an injury are sufficient. *Muslow v. A,G. Edwards & Sons, Inc.*, 509 So. 2d 1012, 1020 (La. App. 2 Cir. 1987).

Plaintiff argues that her claims for assault are based on the Kenner Officers' aggressive approach to the car, shouting, and opening the car door, which made her fear for her life. (Rec. Doc. 72, at 18). However, as the Court found above, the Kenner Officers' use of excessive force between approaching the car and throwing Plaintiff to the ground are protected by *Heck*. Therefore, the Court must look at Plaintiff's allegations once she was already face-first on the ground when Lawler stepped on her. Plaintiff alleges "[w]hile Ms. Danks was handcuffed and lying face down on the ground, Defendant Lawler then stepped on Ms. Danks' back, pressing her further towards the ground, so hard that she could not move." (Rec. Doc. 46, at ¶ 47). Plaintiff does not allege that Lawler threatened her or that she anticipated being stepped on before it occurred. She was lying face-first on the ground when he stepped on her, and without an ability to see what was going on above her, she could not have a reasonable apprehension that Lawler, or anyone else, was about to batter her. Therefore, the

Court finds that Plaintiff has not pled sufficient facts to show that Defendants are liable for assault.

A battery, in turn, is defined as "harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact." *Caudle v. Betts*, 512 So. 2d 389, 391 (La. 1987); *see also* La. Rev. Stat. Ann. § 14:33 (defining battery as "the intentional use of force or violence upon the person of another"). "Under ordinary circumstances the use of reasonable force to restrain an arrestee shields a police officer from liability for battery." *Ross v. Sheriff of Lafourche Parish*, 479 So. 2d 506, 511 (La. App. 1 Cir. 1985). But, "[e]xcessive force transforms ordinarily protected force into an actionable battery, rendering the defendant officer and his employer liable for damages." *Penn v. St. Tammany Parish Sheriff's Office*, 843 So. 2d 1157, 1161 (La. App. 1 Cir. 2003).  Here, Plaintiff alleges that Lawler stepped on her back and pressed her so hard into the ground that she could not move, (Rec. Doc. 46, at ¶¶ 46–50), and the Court, above, found this to be sufficiently pleaded excessive force. Therefore, the Court finds that Plaintiff has pled sufficient facts to show that Lawler is liable for battery.

### B. Conversion

Defendants argue that Plaintiff has failed to allege a claim of conversion for her cell phone or wallet. (Rec. Doc. 50-3, at 33). Specifically, Defendants contend that Plaintiff's allegation that she saw one of the Kenner Officers remove her phone from her hand during her arrest is not sufficient. (*Id.* at 34). In opposition, Plaintiff asserts that she has sufficiently alleged that, regardless of who exactly took possession of her

phone and wallet, all three Kenner Officers assisted in seizing these items and failed to secure their return, thus contributing to depriving her of her possessions and acting in a manner inconsistent with her property rights. (Rec. Doc. 72, at 23). Plaintiff alleges that the Kenner Officers "removed Ms. Danks' phone and wallet from her hands . . . ," (Rec. Doc. 46, at ¶ 46), and "[t]he Kenner PD did not return Ms. Danks' cell phone or wallet to her and have not provided any information concerning either item," (*id.* at ¶ 53).

However, this claim is not properly before this Court. To reclaim items that have been seized in connection with criminal proceedings, a motion must be filed with the clerk of court. La. Rev. Stat. § 15:41. Additionally, the court may render an ex parte order for the disposition of the property. *Id.* Therefore, "a motion for return of property filed pursuant to La. R.S. 15:41 is part and parcel of a criminal proceeding, and is thus included within the jurisdiction of the criminal court presiding over or having presided over the criminal proceeding." *In re Matter Under Investigation*, 15 So. 3d 972, 984 (La. 2009). A civil proceeding is not the proper avenue for a party seeking the return of seized property being used as evidence in a criminal proceeding. Proceeding. *Delta Retail 45, L.L.C. v. Cox*, 26 So. 3d 200, 205 (La. App. 2 Cir. 2009).

### C. Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must allege that: (1) the defendant's conduct was extreme and outrageous; (2) the emotional distress suffered by the plaintiff was severe; and (3) the defendant intended to inflict severe emotional distress or knew that such distress would be

certain or substantially certain to result from his conduct. *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). To satisfy the first element, the defendant's conduct must "go beyond all possible bounds of decency, and . . . be regarded as atrocious and utterly intolerable in a civilized community." *Id.*

Plaintiff alleges that she suffered serious emotional trauma and continues to experience mental anguish over the humiliation of lying on the ground with her pants down and her body exposed. (Rec. Doc. 46, at ¶ 128). Plaintiff claims that menstruation is intrinsically related to human dignity and when a basic human dignity is violated, it causes deep emotional distress akin to physical torture. (*Id.* at ¶ 128 n.2). In *Garcia v. Algiers Charter Schools Association, Inc.*, the court found that the plaintiff suffered severe emotional distress when she alleged ongoing physical symptoms, and she entered counseling for anxiety and depression. *Garcia v. Algiers Charter Sch. Ass'n, Inc.*, No. 17-8126, 2018 WL 4932052, at *5 (E.D. La. Oct. 11, 2018). The plaintiff "testified that she dreaded coming to work, sat in her car crying and vomiting for over an hour and then had to call in sick . . . ." *Id.* Similarly, in *Skidmore v. Precision Printing and Packaging, Inc.*, the court found that the plaintiff suffered severe emotional distress when "she lost weight, experienced anxiety attacks, had headaches and nightmares, and became depressed. She also proffered the testimony . . . a psychiatrist, who testified that [she] suffers from post-traumatic stress disorder." *Skidmore v. Precision Printing & Pkg., Inc.*, 188 F.3d 606, 614 (5th Cir. 1999). Based on the above case law, the Court finds that Plaintiff has failed to

allege that her claims of mental anguish and humiliation amount to severe emotional distress.

### D. Negligent Infliction of Emotional Distress

"Louisiana law does not generally recognize an independent cause of action for negligent infliction of emotional distress." *Lann v. Davis*, 793 So. 2d 463, 466 (La. App. 2 Cir.2001) (citing *Moresi v. Department of Wildlife*, 567 So. 2d 1081 (La. 1990)); *Bacas v. Falgoust*, 760 So. 2d 1279, 1282 (La. App. 5 Cir. 2000). The cause of action "is available under limited circumstances only." *Id.* Specifically, Louisiana tort law recognizes a cause of action for negligent infliction of emotional distress only in extraordinary situations, where there is an "especial likelihood of genuine and serious mental distress, arising from . . . special circumstances, which serves as a guarantee that the claim is not spurious." *Moresi*, 567 So. 2d at 1096. To state a claim for negligent infliction of emotional distress, a plaintiff must allege the following elements: (1) that an independent, direct duty was owed to plaintiff by defendant; (2) that the duty afforded protection to plaintiff for the risk and harm caused; (3) that the duty was breached; and (4) that the mental anguish suffered by the plaintiff was genuine and serious. *Bacas*, 760 So. 2d at 1282.

Under Louisiana case law, emotional distress is considered "serious" if "a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." *Held v. Aubert*, 845 So. 2d 625, 633–34 (La. App. 1 Cir.2003). "A non-exhaustive list of serious emotional distress includes neuroses, psychoses, chronic depression, phobia, and shock." *Id.*

here, Plaintiff has not alleged any facts that show her emotional distress is genuine and serious such as neuroses, psychoses, chronic depression, phobia, or shock. Instead, she has simply pled that she suffered serious emotional trauma and continues to experience mental anguish over the humiliation of lying on the ground with her pants down and her body exposed. (Rec. Doc. 46, at ¶ 128). This is not sufficient.

### E. Negligence

In determining whether to impose liability under Article 2315, Louisiana courts employ a duty-risk analysis, whereby a plaintiff must establish the following five elements:

> (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element).

*Audler v. CBC Innovis Inc.*, 519 F.3d 239, 249 (5th Cir. 2008) (internal citations omitted).  "A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability." *Mathieu v. Imperial Toy Corp.*, 646 So.2d 318, 321 (La. 1994).

Defendants argue that because the Kenner Officers acted reasonably under the circumstances, they cannot be liable for negligence. (Rec. Doc. 50-3, at 38). In opposition, Plaintiff contends that the Kenner Officers' conduct is the cause-in-fact of

her injuries; they had a duty of care as police officers with a citizen in custody; and they breached that duty when they used excessive force against her. (Rec. Doc. 72, at 21). Additionally, Plaintiff asserts that her risk of harm was within the scope of the Kenner Officers' duty to her. (*Id.*). The Court will go through each element of Louisiana's duty-risk analysis. First, as to cause-in-fact, Plaintiff alleges that she has suffered back pain caused by being stepped on, and that, but for being stepped on, Plaintiff argues that she would not be suffering ongoing backpain. (Rec. Doc. 46, at ¶ 58). Moreover, Plaintiff claims that her emotional trauma and mental anguish was the foreseeable consequence of being prone, face-first on the ground with her pants down while an officer stepped on her. (*Id.* at ¶¶ 47—51, 59); (Rec. Doc. 72, at 21). Next, as both Defendants and Plaintiff aver, a police officer's "authority must at all times be exercised in a reasonable fashion and he must act as a reasonably prudent man under the circumstances." (Rec. Doc, 50-3, at 37—38); (Rec. Doc. 72, at 21) (both quoting *N.S. v. City of Alexandria*, 919 F. Supp. 2d 773, 782 (W.D. La. 2013)). Third, as the Court found, above, Plaintiff has sufficiently alleged that Lawler acted with excessive force, which is, on its face, not reasonable force, when he stepped on Plaintiff's back and watched her squirm on the ground trying to pull up her pants while begging those around her to help. Fourth, the risk of Plaintiff's alleged physical and psychological harm was within the scope of Lawler's duty as a police officer to treat arrestees reasonably. Finally, Plaintiff alleges that she experienced back pain and serious emotional trauma, including mental anguish. (Rec. Doc. 46, at ¶¶ 58–59).

Therefore, the Court finds that Plaintiff has sufficiently alleged facts that show that Lawler is liable for negligence, for both physical and psychological damages.[2]

### F. Vicarious Liability

Plaintiff's final claim for relief, vicarious liability against former Police Chief Glaser and the City of Kenner as the Kenner Officers' employer, implies a viable underlying tort, in this case, battery and negligence. Under Louisiana law, employers, such as the City of Kenner, are vicariously liable for the acts of their employees. *Deville*, 567 F.3d at 174. ("Municipalities do not enjoy special protection from vicarious liability under Louisiana law and are subject to *respondeat superior* like every other employer."). Because the Court declines to dismiss all of Plaintiff's state law claims at this stage of the proceedings, Plaintiff's vicarious liability claims against former Police Chief Glaser and the City of Kenner survive Defendants' *Motion to Dismiss*.

### CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' *Motion to Dismiss, Alternatively, Motion for Summary Judgment* **(Rec. Doc. 50)** is **GRANTED IN PART AND DENIED IN PART.**

---

[2] Despite the fact that the Court has dismissed Plaintiff's claims for intentional infliction of emotional distress and negligent infliction of emotional distress, Plaintiff's Complaint alleges physical injuries as well. If, at trial, she can prove facts to support her claims for physical injury, the jury will be instructed to award her not only damages for physical injury, but also instructed regarding damages for emotional distress. Plaintiff will have the opportunity to recover her alleged emotional distress damages directly under her federal § 1983 claim or her state negligence claim.

**IT IS FURTHER ORDERED** that the following claims are **DISMISSED WITH PREJUDICE**: within Count I, the excessive force claims under 42 U.S.C. § 1983 against Defendants P. Grayson and D. Grayson; within Count IV, the entirety of the declaratory judgment claim under 28 U.S.C. § 2201; within Count V, the entirety of the state law assault claim; within Count VI, the state law claims of battery against Defendants P. Grayson and D. Grayson; within Count VII, the entirety of the state law conversion claim; within Count VIII, the entirety of the state law intentional infliction of emotional distress claim; within Count IX, the entirety of the state law negligent infliction of emotional distress claim; and within Count X, the state law claims of negligence against Defendants P. Grayson and D. Grayson.

The Court retains jurisdiction over: within Count I, the excessive force claim under 42 U.S.C. § 1983 against Defendant Lawler; within Count III, the *Monell* liability for failure to train claim under 42 U.S.C. § 1983 against former Police Chief Glaser and the City of Kenner; within Count VI, the state law claim of battery against Defendant Lawler; within Count X, the state law claim of negligence against Defendant Lawler; and within Count XI, the state law claims of vicarious liability against former Police Chief Glaser and the City of Kenner.

**IT IS FURTHER ORDERED** that Defendants' *Motion for Protective Order* **(Rec. Doc. 51)** is **DENIED as moot.**

New Orleans, Louisiana, this 8th day of September, 2022.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE