UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JACINTA DANKS

CIVIL ACTION

VERSUS

NO: 21-1806

PHILLIP GRAYSON, ET AL.

SECTION: "J" (1)

## ORDER & REASONS

Before the court is a *Motion for Summary Judgment* **(Rec. Doc. 107)** filed by Defendants: the City of Kenner, former Police Chief Michael J. Glaser, and Chase Lawler. Plaintiff has filed an opposition (Rec. Doc. 122) to which the Defendants have replied (Rec. Doc. 127). Also before the Court are two motions in limine. The first is a *Motion in Limine to Exclude and/or Limit Evidence or Testimony from Craig Ledet, D.C.* **(Rec. Doc. 107)**, and the second is a *Motion in Limine to Exclude and/or Limit Evidence or Testimony from Sheetal Patel, Ph.D.* **(Rec. Doc. 108).** Plaintiff has opposed both motions (Rec. Docs. 118 and 119 respectively), and Defendants have filed replies. (Rec. Docs. 121, 133). Having considered the motions, legal memoranda, record, and appliable law, the Court finds that the *Motion for Summary Judgment* **(Rec. Doc. 110)** should be **GRANTED in part and DENIED in part**. The motion in limine regarding Dr. Craig Ledet **(Rec. Doc. 107)** should be **GRANTED**, and the motion in limine regarding Dr. Sheetal Patel **(Rec. Doc. 108)** should be **GRANTED in part and DENIED in part**.

## FACTS AND PROCEDURAL BACKGROUND

This case arises from a traffic stop on October 11, 2020 around 12:30a.m. Plaintiff, Jacinta Danks, was the front seat passenger in a vehicle operated by her brother. The vehicle was stopped for an expired temporary paper license plate by Defendant, Officer Phillip Grayson ("P. Grayson"), with the City of Kenner Police Department. When the vehicle was pulled over, it initially stopped, and then, as P. Grayson began to exit his patrol unit, the vehicle accelerated away. After a brief pursuit, the vehicle came to a stop and the driver, Plaintiff's brother, fled from the car. P. Grayson pursued and ultimately apprehended him.

P. Grayson then returned to the stopped vehicle where Plaintiff and a passenger remained in the backseat. Defendants, Officer Daniel Grayson ("D. Grayson") and Officer Chase Lawler ("Lawler") joined P. Grayson (collectively, "Kenner Officers"). Plaintiff alleges that the Kenner Officers rushed to the passenger side of the car where she was seated, and at least one had their gun pointed at her. She claims that they began yelling at her while she sat with her hands in the air, but she could not make out what they were saying. Plaintiff alleges that she was disoriented and frightened by the Kenner Officers' aggressive shouting and the manner in which they approached the car. This fear, she claims, momentarily paralyzed her, and she found herself unable to immediately speak or open the door. Eventually able to unlock and open the door, Plaintiff alleges that the Kenner Officers reached in and violently grabbed her. According to P Grayson, as he was attempting to unbuckle Plaintiff's seatbelt and remove her from the vehicle, she struggled with

2

him and bit his hand. Once P. Grayson unbuckled her seatbelt, Plaintiff claims the Kenner Officers violently pulled her from the car. As she was being removed from the car, Plaintiff alleges that her foot got caught between the cabin of the car and the car door.

Once removed from the vehicle, Plaintiff claims that the Kenner Officers threw her forcefully face-first to the ground and removed her phone and wallet from her hands. Once her phone and wallet were out of her hands, Plaintiff alleges that her hands were handcuffed behind her back. While handcuffed and lying face down on the ground, Plaintiff claims that Lawler stepped on her back, pressing her further towards the ground so hard that she could not move. Additionally, after she was removed from the vehicle, Plaintiff alleges that her pants came down, exposing her underwear and menstruation. Because she was handcuffed, Plaintiff claims that she was unable to pull her pants back up, and she remained face down on the ground with Lawler's foot on her back and her pants pulled down for approximately five minutes or more. Plaintiff alleges that she begged the Kenner Officers to pull her pants up, and she squirmed in an attempt to do it herself until someone else pulled them up.

Eventually, Plaintiff claims that she was yanked up, patted down, and read her *Miranda* rights. She was charged with resisting arrest and assaulting an officer. Plaintiff alleges she was put in the back of a police car, barefoot and handcuffed, before her shoes were thrown to her in the back seat. The charge against Plaintiff for resisting arrest was subsequently dismissed, and she was convicted of assaulting P.

Grayson on April 21, 2022. Finally, Plaintiff claims that her phone and wallet were never returned to her. As a result of this incident, Plaintiff alleges that she has experienced physical pain, a bruised handprint on her arm that lasted multiple weeks, back pain, and serious emotional trauma.

Plaintiff filed the instant suit against the above-named Kenner Officers; City of Kenner; former Police Chief Michael J. Glaser; and seven "bystander" officers for violations of her federal and state civil rights. The "bystander" officers were subsequently dismissed by Plaintiff without prejudice. Defendants then filed a motion to dismiss (Rec. Doc. 50) which this Court granted in part and denied in part. (Rec. Doc. 76). The remaining claims are the excessive force claim under 42 U.S.C. § 1983 against Defendant Lawler, the state law claim of battery against Defendant Lawler, the state law claim of negligence against Defendant Lawler, the state law claims of vicarious liability against former Police Chief Glaser and the City of Kenner, and the *Monell* liability for failure to train claim under 42 U.S.C. § 1983 against former Police Chief Glaser and the City of Kenner. The remaining Defendants have now filed the instant motion for summary judgment on those remaining claims.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a

dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little,* 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta,* 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex,* 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may

not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

## I.   CLAIMS AGAINST OFFICER LAWLER

Plaintiff has an excessive force claim as well as state law battery and negligence claims against Officer Lawler arising out of his alleged action of stepping on Plaintiff's back while she was handcuffed and prone with her pants pulled down.

### a.   EXCESSIVE FORCE

"To establish a claim of excessive force under the Fourth Amendment, plaintiffs must demonstrate: '(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" *Trammell v. Fruge*, 868 F.3d 332, 340 (5th Cir. 2017) (quoting *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009)). Fundamentally, "the touchstone of our inquiry is simply the reasonableness of the force employed." *Buehler v. Dear*, 27 F.4th 969, 981 (5th Cir. 2022). "Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" *Deville*, 567 F.3d at 167 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

The Court will first consider Plaintiff's injury. Generally, to maintain a claim for excessive force, a plaintiff need not demonstrate a significant injury, but the injury must be more than *de minimis. See Tarver v. City of Edna*, 410 F.3d 745, 752 (5th

Cir. 2005). Recently, the Fifth Circuit has characterized the injury requirement as "a sliding scale, not a hard cutoff." *Buehler*, 27 F.4th at 982. This approach treats the degree of injury—even if minor—as interrelated to the reasonableness and excessiveness of the officer's force. "[A]lthough a *de minimis* injury is not cognizable, the extent of injury necessary to satisfy the injury requirement is 'directly related to the amount of force that is constitutionally permissible under the circumstances.'" *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017) (alternation in original) (quoting *Brown v. Lynch*, 524 F. App'x 69, 79 (5th Cir. 2013)). Accordingly, "[a]ny force found to be objectively unreasonable necessarily exceeds the *de minimis* threshold, and, conversely, objectively reasonable force will result in *de minimis* injuries only." *Id.* (quoting *Brown*, 524 F. App'x at 79). In other words, "as long as a plaintiff has suffered 'some injury,' even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force." *Id.* (quoting *Brown*, 524 F. App'x at 79). This means that if the officer's force was unreasonably excessive, Danks need only show "some injury."

Plaintiff alleges that Defendant Lawler used excessive force when he stepped on her back while she was handcuffed and on the ground, causing her physical and psychological injury. (Rec. Doc. 122, at 10). Defendants dispute whether Officer Lawler was even present at the time of Plaintiff's arrest. (Rec. Doc. 110 at 29). However, there is a genuine issue of material fact as to the timing of Officer Lawler's presence at the scene. Although Officers P. Grayson, D. Grayson, and Lawler have

all testified that he was not present and therefore could not have acted as Plaintiff claims, Ms. Danks testified that she saw Officer Lawler out of her peripheral vision when he stepped on her. (Rec. Doc. 122-1, at 5). Therefore, there is conflicting testimony as to the timing of the presence of Officer Lawler at the scene. This key dispute alone presents a genuine issue of material fact. However, for this factual dispute to prevent summary judgment, Plaintiff must be able to prove "some injury" resulting from Officer Lawler's actions.

As evidence of her injuries, Plaintiff has submitted the expert report of Dr. Craig Ledet, a chiropractor who examined Plaintiff two years after the incident. Dr. Ledet found that Ms. Danks suffered "joint dysfunction in the cervical, thoracic and lumbar spine as well as the right sacroiliac joint dysfunction." (Ledet Report, at 2). Dr. Ledet opined that Plaintiff's injuries "*could* have been caused by the traumatic event she described to me that occurred on 10/10/20." *Id.* at 3 (emphasis added). Plaintiff has also submitted the expert report of Dr. Sheetal Patel, a psychologist who also examined Ms. Danks over two years after the incident at issue. Dr. Patel diagnosed Ms. Danks with PTSD, opining that this was "directly caused by the torment of the violence and threats she experience by the police during the incident . . . ." (Patel Report, at 7). Defendants have filed motions in limine to exclude the testimony of both Dr. Ledet and Dr. Patel. (Rec. Docs. 107, 108). Therefore, in order to determine whether summary judgment should be granted as to the excessive force claim, the Court must first decide whether to admit or exclude this evidence.

### i. Physical Injury: Dr. Craig Ledet

Defendants argue that Dr. Ledet's testimony should be excluded or limited because a plaintiff must show that their injuries resulting from excessive force "resulted directly and only from a use of force that was clearly excessive." *Solis v. Serrett*, 31 F.4th 975, 981 (5th Cir. 2022). The argue that Dr. Ledet made no definitive conclusions about Ms. Danks' injuries because Dr. Ledet only opined that Ms. Danks' symptoms *could* have resulted from the October 10th incident. Defendants assert that a mere possibility of causation is not sufficient and therefore renders Dr. Ledet's opinion irrelevant. (Rec. Doc. 107, at 6). In opposition, Plaintiff argues that Dr. Ledet "does not need to causally tie Ms. Danks' injuries only to Defendant Lawler's use of excessive force and rule out all other possible causes," but instead he only needs to "eliminate the possibility that the alleged injuries were caused by a preexisting condition or an action of a third party." (Rec. Doc. 118, at 3, 4). However, in reply, Defendants argue that Plaintiff's opposition "did not address, in any meaningful way, the glaring issue with respect to Dr. Ledet's expert report and testimony—that he could not relate Danks' injuries to the incident in this case more probably than not." (Rec. Doc. 131, at 1). In fact, when directly asked in his deposition whether he could say that that the Plaintiff's complained of injuries were more probably than not caused by the incident, Dr. Ledet specifically testified that he could not make this conclusion. (Rec. Doc. 131, at 2, 3). Based on this testimony, the Court concludes that Dr. Ledet's testimony is irrelevant because it does not serve to establish the causation of her injuries by a preponderance of the evidence. Therefore, Defendants' *Motion in*

*Limine to Exclude and/or Limit Evidence or Testimony from Craig Ledet, D.C.* **(Rec. Doc. 107)** is **GRANTED**, and the testimony of Dr. Ledet is hereby excluded.

### ii.   Psychological Injury: Dr. Sheetal Patel

Defendants argue that Dr. Patel's testimony should be excluded or limited because her opinion relates to the incident as a whole and because she does not differentiate between the actions of other officers prior to Plaintiff's arrest which have already been dismissed and the remaining actions of Officer Lawler in forming her opinion. (Rec. Doc. 108, at 6). Defendants argue that "in none of the explanations given for any category of the [CAPS-5],[1] does Dr. Patel or Danks mention or relate a symptom to the allegations against Officer Lawler." *Id.* at 7. In opposition, Plaintiff cites to *Sampy v. Rabb*, 2021 WL 5279480, at *8 (W.D. La. Aug. 26, 2021) in which the court considered a motion to dismiss where the plaintiff's complaint did not specify which injuries resulted from which alleged use of excessive force. Like in this case, the court had already dismissed excessive force claims which arose prior to the plaintiff's arrest, but claims resulting from post-arrest actions of one of the officers remained. The court held that plaintiff had sufficiently alleged that his injuries resulted from this final act of violence even though he did not specifically state their cause because each injury "could conceivably have resulted from the final alleged use of force." *Id.* Plaintiff also argues that Dr. Patel's report eliminates the possibility that Ms. Danks' psychological trauma was preexisting or caused by a third party, and that this is sufficient to make it relevant. (Rec. Doc. 119, at 4, 5). In reply, Defendants argue that

---

[1] The CAPS-5 is a diagnostic tool for PTSD.

Dr. Patel's report does the exact opposite: it does not eliminate the possibility that her PTSD was caused by third parties because it "expressly cites to the actions of other officers occurring prior to Danks' handcuffing." (Rec. Doc. 133, at 2). Furthermore, Defendants argue that *Sampy* is distinguishable because it merely decided a motion to dismiss rather than ruling on the merits of any of the plaintiff's claims. (Rec. Doc. 133, at 1, 2).

Although Dr. Patel's expert report does refer to actions which have now been dismissed from this case, she does, at least in part, base her diagnosis on the alleged actions of Officer Lawler. In recounting Plaintiff's narrative, Dr. Patel reports that Ms. Danks felt intense humiliation because of being stepped on by Officer Lawler while her pants were pulled down. (Patel Report, at 3). Shame is then specifically listed amongst the diagnostic criteria in the CAPS-5. (Patel Report, at 6). Dr. Patel clearly based her diagnosis, at least in part, on the symptoms Ms. Danks experiences as a result of the alleged actions of Officer Lawler. Therefore, the Court cannot say that the testimony of Dr. Patel is irrelevant. Furthermore, any deficiency related to Plaintiff's initial failure to disclose Dr. Patel's prior testifying cases has been cured and is harmless. However, the Court finds that Defendants' motion should be **GRANTED in part** in that Dr. Patel's testimony should be limited to psychological injury stemming from the actions of Officer Lawler rather than from the actions of the previously dismissed officers.

### iii.     Genuine Issue of Material Fact Relating to Injury

Returning to Plaintiff's excessive force claim, the Court finds that there is a genuine issue of material fact as to whether Plaintiff sustained injuries as the result of Officer Lawler's actions. Although Dr. Ledet's testimony has been excluded, Plaintiff may still rely on the testimony of Dr. Patel to establish that she has suffered psychological injury as a result of being stepped on. Psychological injuries alone can serve as a basis for liability under Section 1983. *Tarver*, 410 F.3d at 752. There are genuine issues of material fact as to whether Officer Lawler was present at the scene and whether his post arrest actions caused Ms. Danks to develop PTSD. Furthermore, this Court has already held that if Officer Lawler acted as Plaintiff alleges in her complaint, then he acted unreasonably in using excessive force. In the context of the qualified immunity analysis the Court stated:

> In evaluating Plaintiff's claim for excessive force against Lawler, the Court finds that Plaintiff has sufficiently pled facts to show he used excessive force in violation of her constitutional rights. Although Plaintiff's injuries are de minimis and she had just bitten an officer, she was lying face-first on the ground in handcuffs with her pants down. She no longer posed any threat to an officer or anyone else because she was subdued and restrained. While her squirming could have been construed as resisting arrest, in conjunction with her alleged pleas for help and her own efforts to get her pants back up, a reasonable officer would understand what Plaintiff was attempting. Finally, per Plaintiff's claims, Lawler immediately stepped on her back and pushed her into the ground so hard that she could not move. Therefore, Lawler violated Plaintiff's federal right to be free from excessive force under the Fourth Amendment.

(Rec. Doc. 76, at 18). In fact, even Officer Lawler as well as several other officers testified that if an officer acted as he allegedly did, this action would be in violation of Kenner Police Department policy. (Rec. Doc. 122, at 10). Therefore, the Court finds

that a reasonable jury could find in favor of Plaintiff that Officer Lawler acted with excessive force. Therefore, as to the excessive force claim, summary judgment is **DENIED**.

### b. STATE LAW CLAIMS AND VICARIOUS LIABILITY

Plaintiff has remaining claims against Officer Lawler for battery and negligence under Louisiana law. Defendants argue that summary judgment should be granted as to these claims because Officer Lawler was not have been present at the scene to commit them. However, as previously discussed, there is a genuine issue of material fact as to whether or not Officer Lawler was present at the scene at the time Ms. Danks was laying on the ground. Therefore, summary judgment is **DENIED** as to the state law battery and negligence claims against Officer Lawler and also **DENIED** as to the vicarious liability claims.

### II. *MONELL* LIABILITY FOR FAILURE TO TRAIN

### A. City of Kenner

While neither state officials nor municipalities are vicariously liable for the deprivation of constitutional rights by employees, each can be held liable for their own acts or failures to act which themselves cause constitutional violations. S*ee Monell v. Dep't of Social Services of City of N.Y.*, 436 U.S. 658, 694 (1978). To establish municipal liability under § 1983, a plaintiff must prove that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838,

847 (5th Cir. 2009). An official policy may take the form of a widespread practice that is "so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id.* A failure to train can amount to such a custom when a pattern of similar incidents shows that "it should have been obvious to the policymakers that the risk of serious injury was a highly predictable consequence of the failure to train." *Id.* (citation omitted). In a § 1983 claim for failure to supervise or train, the plaintiff must show that: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Goodman v. Harris Cnty.*, 571 F.3d 388, 395–96 (5th Cir. 2009) (citation omitted).

Defendant has moved for summary judgment on Plaintiff's failure to train claim, arguing that "it is undisputed KPD trains its officers on the use of force pursuant to its Use of Force Policy" which they argue "meets and exceeds the requirements of the State of Louisiana Peace Officer Standards and Training Council." (Rec. Doc. 110, at 28). In response, Plaintiff argues that KPD's training was inadequate on three grounds: first, KPD officers are not trained "specifically on the use of force against vehicle passengers", second, "that KPD officers also receive inadequate training on the consequences of putting bodyweight on a handcuffed person in the prone position", and third that "KPD officers receive inadequate training on the use of force as a whole." (Rec. Doc. 122, at 17, 18).

14

Turning to Plaintiff's first argument that KPD should offer training about use of force specific to vehicle passengers, Plaintiff does not cite to any case where a court has held that such specific training is necessary, nor does Plaintiff attempt to establish how this training would be any different from the general use of force training that all KPD officers receive or how this general use of force training is inadequate when applied to vehicle passengers. Furthermore, as Defendants point out, Plaintiff was not a vehicle passenger at the time of Officer Lawler's alleged use of excessive force. Rather Plaintiff had been previously removed from the vehicle and was already arrested. Therefore, the Court cannot find a failure to train on this ground.

As to Plaintiff's contention that KPD officers receive inadequate training on the consequences of putting bodyweight on a handcuffed person in the prone position, Plaintiff admits that officers are told that "putting their weight on the diaphragm of an individual handcuffed in a prone position could cause suffocation." (Rec. Doc. 122, at 18). However, Plaintiff asserts that KPD's training on this subject is inadequate because "the totality of the alleged training on putting bodyweight on a handcuffed person in a prone position is one bullet point in a 46-page training manual that covers at least ten distinct topics on arrest techniques generally." *Id.* Additionally, as to Plaintiff's contention that KPD's use of force training as a whole is inadequate, Plaintiff argues that "when KPD officers were asked to articulate their understanding of the classroom concepts related to use of force . . . they were unable to convey what they were taught." *Id.* Plaintiff argues that this lack of memory on the part of KPD

officers is evidence that KPD's training was inadequate. However, the Court cannot impose liability on the City of Kenner for its officers' own lapses of memory. The mere fact that the officers in question could not recite their training from memory at worst shows that they were not paying attention, but it cannot stand to establish that the city did not adequately provide training. *See Pinder v. Skero*, 375 F. Supp. 3d 725, 745 (S.D. Tex. 2019).

However, the Fifth Circuit has acknowledged that "[t]he requirements of proof of inadequacy of training and causation are, in many respects, intertwined," due to the need to present evidence of a "causal relationship between any shortcoming of the officers' training . . . and the injury complained of." *Pineda v. City of Houston*, 291 F.3d 325, 334 (5th Cir. 2002). Plaintiff argues that "a series of police misconduct complaints can put a municipality on notice that its police training is constitutionally inadequate." *See Aswell v. Culpepper*, 2015 WL 1638094, at *11-12 (E.D. La. Apr. 13, 2015). "Where municipal decision makers have notice that a training program does not prevent constitutional violations, "[t]heir continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees" may rise to the level of 'deliberate indifference.'" *Hayward v. City of New Orleans*, 2004 WL 258116 (E.D. La. Feb. 12, 2004) (citing *Board of County Com'rs of Bryan County Okl. v. Brown*, 520 U.S. 397, 407 (1997)). Therefore, the Court may turn to evidence of police misconduct to evaluate whether there is a genuine issue of material fact as to the adequacy of the KPD's training.

Plaintiff asserts that KPD and its Police Chief were on notice as to the deficiency of KPD training because of numerous excessive force claims made against KPD Officers. (Rec. Doc. 122, at 20). Plaintiff alleges that over a five-year period, KPD documented "between eighteen and thirty-two citizen-initiated complaints" alleging improper use of force. *Id.* Plaintiff also alleges that the reason the exact number of complaints is uncertain is because the KPD does not engage in adequate record keeping of the complaints it receives.[2] Furthermore, Plaintiff argues that none of the use of force complaints over this five-year period were reported as sustained or ever resulted in any officer discipline. *Id.* at 21. Plaintiff contends that when and if the complaints against the KPD are investigated, investigators are not even required to interview the officers involved. *Id.* In fact, apparently none of the officers involved in this case were questioned in response to Ms. Danks' complaint. *Id.* at 22. Therefore, Plaintiff asserts that these 18-32 instances of excessive force went not only un-punished but also un-investigated.

Defendants, citing to the deposition of Captain Ortiz, instead argue that KPD received only five excessive force complaints related to traffic stops since 2018, and that just these traffic stop incidents, rather than all use of force complaints should be considered. (Rec. Doc. 135, at 5). However, as Defendants themselves pointed out when arguing that it is unnecessary for the KPD to have a specific policy for use of

---

[2] Plaintiff contends "There are inconsistencies in KPD metrics. For example, some reports show that between July 2017 and October 1, 2022 there were at least 32 citizen-initiated inquiries relating to the use of force. Pltfs' SMF 86. However, in its deposition testimony, the City acknowledged only 18 use of force complaints from January 1, 2018 to December 31, 2022. Pltfs' SMF 84. From July 2017 to June 2018, there were 5 citizen-initiated inquiries relating to the use of force, indicating that the discrepancy in the numbers is a factual inconsistency. Pltfs' SMF 86." (Rec. Doc. 122, at 8, fn. 4).

force relating to vehicle passengers, there is no reason why only use of force incidents when a car was involved should be considered in determining whether KPD failed to properly train its officers on use of force in general. Furthermore, the Fifth Circuit has held that prior instances of excessive force are relevant in evaluating a failure to train claim as long as they are "fairly similar" to what happened to the plaintiff. *Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005). In the case of excessive use of force, a prior instance is "fairly similar" as long as it involved injury to a third party. *Id.* Therefore, the relevant number of violations in this case is the larger range of 18-32 complaints rather than this smaller number.

Defendants also argue (relying on their reduced count of five violations) that Plaintiff cannot produce enough aggregate complaints to establish a pattern. Defendants cite to cases in which 27 use of force incidents in the city of Fort Worth and 11 in the city of Houston were inadequate to establish a pattern of misconduct. *See Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851–52 (5th Cir. 2009). *Also see Pineda*, 291 F.3d at 329. However, the City of Kenner has a far smaller population than either of these cities, making the 32 complaints a far higher rate of complaints per capita than in either of the cases upon which Defendants rely. The Fifth Circuit has held that the size of a police department is relevant in determining whether a number of incidents can establish a pattern. *Pineda*, 291 F.3d at 329.

Finally, the Court finds it relevant that the KPD's own troublesome record keeping and pattern of surface-level-only investigations appears to cut against the argument that they were unaware of or did not condone the use of excessive force. In

*Peterson v. City of Fort Worth, Tex.*, the Fifth Circuit found it relevant that only four of the 27 complaints against the City were "sustained" after investigation. 588 F.3d at 852. The Court stated "that the department itself vaguely ruled most of its complaints "not sustained" or "unfounded" is no assurance that these investigations exonerate the City. To the contrary, that only four of the 27 complaints were "sustained" after investigation may tilt in Peterson's favor." *Id.* The *Peterson* court ultimately found that the record as a whole could not support a claim against the City. However, in this case because of the high volume of complaints, coupled with the resulting lack of investigation and discipline, Plaintiff has established a genuine issue of material fact as to whether the City of Kenner failed to adequately train its employees on uses of force and whether it acted with deliberate indifference in failing to correct the training once it was on notice of the inadequacy.

Having found that there is a genuine issue of material fact in regard to the adequacy of the City of Kenner's use of force training, the Court must now examine whether there is a causal link between this alleged failure and the constitutional violation suffered by Plaintiff. Defendants do not address this element in their motion for summary judgment and instead hang their entire argument on the contention that the KPD had a Use of Force policy and that Officer Lawler knew that the alleged conduct of stepping on a handcuffed and prone individual would violate that policy. (Rec. Doc. 110, at 28). "A pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training . . .is the 'moving force' behind the plaintiff's injury," and "municipal liability for failure to train may be

proper where it can be shown that policymakers were aware of, and acquiesced in, a pattern of constitutional violations." *Brown*, 520 U.S. at 407-08 (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989) (O'Connor, J. concurring in part and dissenting in part)). The alleged pattern of violations that the KPD engaged in tends to show that inadequate training was the moving force behind Ms. Danks' injury. Therefore, summary judgment as to Plaintiff's *Monell* claim against the City of Kenner is **DENIED**.

### B.     Former Police Chief Glaser

In their Motion to Dismiss (Rec. Doc. 50), Defendants argued that a "failure to train" claim brought against a government official in his official capacity is the equivalent of a suit against the governmental entity. (Rec. Doc. 50-3, at 26). Therefore, Defendants contended the suits against the City of Kenner and against Former Police Chief Glaser acting in his official capacity are a single claim in which the suit against the governmental official is subsumed within his claim against the governmental entity. The Court deferred in ruling on this issue, stating that there was no reason to dismiss the potentially duplicative claims at the 12(b)(6) stage although the claims against the City of Kenner and the Former Police Chief would be evaluated on the same standard. (Rec. Doc. 76, at 20, 21).

Defendants do not even mention Chief Glaser in the portion of their memorandum dedicated to Plaintiff's *Monell* claim against the City of Kenner, nor do they attempt to argue that the claims against Chief Glaser are subsumed within the claims against the city. However, the law is clear that "a suit against a governmental

officer 'in his official capacity' is the same as a suit 'against [the] entity of which [the] officer is an agent, and victory in such an 'official-capacity' suit 'imposes liability on the entity that [the officer] represents.'" *McMillan v. Monroe Cnty, Ala.*, 520 U.S. 781, 785 n.2 (1995) (citations omitted). Thus, when a plaintiff sues both a governmental officer in his official capacity and a governmental entity for an identical claim, the claim against the officer is "subsumed within [the plaintiff's] identical claim against [the government entity]." *Goodman*, 571 F.3d at 396. Because the only claims against Former Chief Glaser are in his official capacity, and because the failure to train claims against him as the policy making authority for the KPD are overlapping with the claims against the City of Kenner, the Court finds that the claims against Officer Glaser should be dismissed at this stage. Therefore, summary judgment is **GRANTED** as to the claims against Former Police Chief Glaser.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' *Motion for Summary Judgment* **(Rec. Doc. 110) is GRANTED in part and DENIED in part.**

**IT IS FURTHER ORDERED** that the motion in limine regarding Dr. Craig Ledet **(Rec. Doc. 107) is GRANTED,** and the motion in limine regarding Dr. Sheetal Patel **(Rec. Doc. 108) is GRANTED in part and DENIED in part**.

New Orleans, Louisiana, this 29th day of March, 2023.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE